Charles J. Rizzo, Deceased by Matilda Rizzo, Widow, Petitioner *v.* Workmen's Compensation Appeal Board (Pittsburgh Board of Education), Respondents.

Argued October 9, 1981, before Judges WILLIAMS, JR., MACPHAIL and PALLADINO, sitting as a panel of three. Reargued May 4, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR., CRAIG, MACPHAIL and DOYLE.

*Amiel B. Caramanna,* with him *Alexander J. Pentecost,* for petitioner.

*David H. Dille,* Assistant Solicitor, with him *Robert J. Stefanko,* Solicitor, for respondent, Pittsburgh Board of Education.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., September 16, 1982:

Matilda Rizzo (claimant) appeals a Workmen's Compensation Appeal Board order denying her fatal claim petition. We reverse.

Charles Rizzo (decedent) died of a myocardial infarction on October 9, 1976. At the onset of his attack, he was home.[1]

The decedent was employed by the Pittsburgh Board of Education as a mechanical engineer and was responsible for maintaining the plumbing, heating and air conditioning at 104 area schools. The claimant alleged that her husband's heart attack was the result of the stress that he experienced in his job and was thus a compensable injury under Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act.[2]

The referee awarded benefits but the Board reversed, concluding that since decedent's heart attack occurred at home benefits must be denied because claimant had failed to prove that he was engaged in the business of his employer when the attack occurred.

---

[1] The onset of decedent's heart attack began at 1:00 a.m. and, while he was being rushed to the hospital for emergency measures, he died.

[2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411.

In light of our Supreme Court's decision in *Krawchuk v. Workmen's Compensation Appeal Board*, Pa. , 439 A.2d 627 (1981), we reverse.

In *Krawchuk* the Supreme Court wrote:

Not infrequently, a stress heart attack is a gradual injury wherein the pressures and strain of the job — physical, mental, or both — take their toll in small doses until, at some point, those doses in the aggregate push the heart past its limits. That such point happens to manifest itself at the victim's home is irrelevant *except* insofar as the location of the final onslaught *might* have some bearing in a given case on whether the injury arose in the course of employment and was related thereto. (Emphasis in original.)

*Id.* at , 439 A.2d at 631.

Thus, the Board must be reversed unless the referee's conclusions of law are not adequately supported by the evidence. *Id.* at , 439 A.2d at 632. As our Supreme Court noted:

The referee is the finder of fact and the scope of appellate review is confined to an examination of the record to determine whether those findings of fact are supported by substantial evidence, and whether any constitutional rights were violated or error of law committed. (Citations omitted.)

*Id.* We thus turn to the findings of fact made by the referee to see if they are supported by the record.

The crucial findings made by the referee were:

15. It was the opinion of Dr. Piroli, based on his knowledge of the decedent's medical history, his home life, his occupational history and his treatment and examinations, that he died on October 9, 1976 due to an acute myocardial infarction caused by the stress to

which he was exposed in the performance of his occupation for the Pittsburgh School District.

....

19. The decedent on October 9, 1976 would have been 54 years of age. He had been a mechanical engineer for other firms prior to his being hired by the Pittsburgh Board of Education in June, 1974. Prior to September, 1975 he had no symptioms of heart or cardiovasculary disease. He did not smoke or drink alcoholic beverages. His treating physician of approximately eight (8) years found no evidence of diabetes, hyperlipemia or hypertension. He testified that the claimant adhered to his prescribed diet and was not obese.

20. The testimony clearly indicates that the decedent was subject to stress and crisis deadlines in his work with the Pittsburgh Board of Education. That five or six building programs, including the Barshears project, were in progress when he was hired.

21. Most importantly the testimony clearly indicates that in 1975 the energy crisis placed considerable added stress to the decedent's work responsibility including climbing stairs and fire escapes to inspect and adjust equipment dealing with energy that was located on the roofs and basements.

22. Your Referee, in consideration of the aforementioned Findings of Fact, finds that the decedent due to the stress to which he was exposed by reason of his employment with the Pittsburgh Board of Education suffered an acute myocardial infarction on October 9, 1976 and died.

Dr. Piroli, the decedent's treating physician, testified that he believed that the stress[3] and the type of work that the decedent was engaged in contributed significantly to his heart condition. Dr. Piroli also testified that the decedent did not smoke or drink, was not overweight nor did he suffer from diabetes or hypertension. He repeatedly opined that the stress of decedent's work was the major factor in the decedent's heart attack.

> Q. [W]ithin a reasonable degree of medical certainty, what do you feel the direct cause of Mr. Rizzo's death from a myocardial infarction was?
>
> A. Well, in reviewing the risk factors, I think we did that on the last deposition also, he had very few of the risk factors except the stress at work. At that time we felt it was very significant, maybe the only significant factor that precipitated his last heart attack.

Dr. Judith Murphy, testifying for the Pittsburgh Board of Education, offered conflicting testimony to the effect that no specific factor could be designated as the reason for the decedent's heart attack. We note again that the referee is the arbiter of credibility and on appeal we may not disturb his determination that the testimony of Dr. Piroli was the more credible.

Section 301(c)(1) of the Workmen's Compensation Act states:

> (1) The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto,

---

[3] Other testimony was elicited as to the decedent's compulsive work habits, his conscientiousness and the stress related with keeping the equipment of 104 schools in working order, especially during the energy crisis.

and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury.

In *Krawchuk*, the Supreme Court concluded that under this section a claimant must prove that 1) the injury arose during the course of employment and 2) was related thereto. *Id.* at     , 439 A.2d at 630.

Here, we hold that decedent's heart attack was caused by the stress of his job and that his death resulted therefrom, thus being compensable under Section 301(c)(1) above.

Reversed.

ORDER

The order of the Workmen's Compensation Appeal Board, No. A-77075, dated June 16, 1980, is reversed, and judgment is entered in favor of the claimant, Matilda B. Rizzo and against the Pittsburgh Board of Education, self-insured.

The Pittsburgh Board of Education is ordered to pay to Matilda B. Rizzo workmen's compensation benefits at the rate of $187.00 per week, for the support of herself and her dependent children; Mark, Brian and Michelle Rizzo, beginning on October 9, 1976, and continuing until each of said children reach the age of 18 years or, in the event any one or more of them are enrolled as full-time students in any accredited educational institution, until they reach the age of 23 years.

Thereafter, compensation shall be paid to the claimant at the rate of $187.00 per week continuing

within the meaning and provisions of The Pennsylvania Workmen's Compensation Act.

Interest is payable on all deferred payments of compensation at the rate of ten percent (10%) per annum.

The Pittsburgh Board of Education is further directed to reimburse Matilda B. Rizzo for funeral expenses incurred in the amount of $1,500.00.

The Pittsburgh Board of Education is further directed to reimburse claimant's counsel for reasonable costs incurred in the total amount of $444.90.

Reasonable attorney fees in the amount of $4,500.00 are approved, and the Pittsburgh Board of Education is directed to deduct said amount from the deferred compensation due to the claimant and forward it, together with the aforementioned costs of $444.90, directly to: Alexander J. Pentecost, Esq., 1420 Grant Building, Pittsburgh, Pa. 15219.

Further additional counsel fees, incurred by claimant in defending the appeal from the referee's decision, in the amount of $800.00 are approved, and the Pittsburgh Board of Education shall also deduct these fees from the deferred compensation due and forward them directly to her counsel.

All remaining payments of interest and compensation shall be paid by bank drafts issued in the name of the claimant only and forwarded directly to her.

Judge DOYLE concurs in the result only.