General Electric Company and Electric Mutual
Liability Company, Petitioners *v.* Workmen's
Compensation Appeal Board (Woomer), Respon-
dents.

Submitted on briefs November 14, 1983, to Judges
WILLIAMS, JR., CRAIG and BLATT, sitting as a panel of
three.

*P. Ronald Cooper, Reding, Rea & Cooper, P.C.,*
for petitioners.

*Alexander J. Pentecost,* with him *Amiel B. Cara-
manna, Jr.,* for respondents.

OPINION BY JUDGE CRAIG, December 14, 1983:

General Electric Company and Electric Mutual Liability Insurance Company appeal from a Workmen's Compensation Appeal Board order granting benefits to Eva Justine Woomer under her fatal claim petition.

As a matter of law, is a referee precluded from finding that an injury "arose in the course of employment and was related thereto,"[1] where a claimant's heart attack occurred thirty-three hours after he left his employer's premises? If not, the remaining question is whether substantial evidence of record supports the awarding of benefits here.

Thomas Woomer, a machinist for General Electric, died on May 23, 1976, at age 55. Although he had regularly worked a 4:30 p.m. to 12:30 a.m. shift five days a week, Mr. Woomer worked twelve consecutive eight-hour days before his death. On Sunday, May 23, 1976, approximately thirty-three hours after he left his employer's premises, Mr. Woomer suffered a fatal heart attack in his home. For sometime before his death, a family physician, Dr. Harry Heck, had been treating Mr. Woomer for obesity, diabetes mellitus, and hypertension.

At the hearing, Mrs. Woomer testified that, during her husband's twelve days of consecutive work, he was tired, nervous and unable to sleep. Based upon her testimony, Mr. Woomer's death certificate, hospital records, and Dr. Heck's testimony, Dr. Cyril Wecht, a forensic pathologist, testified as follows:

> In my opinion, the work schedule, specifically the twelve days of consecutive working on the job with the associated nervous tension, insom-

---

[1] The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, §301(c), *as amended*, 77 P.S. §411.

nia, and apparent emotional distress as observed and commented upon by his wife, were directly related to his death on May 23 as a result of hypertensive heart disease and coronary artery thrombosis.

. . . .

A person who has a compromised heart by virtue of long-standing high blood pressure and arteriosclerosis is much more susceptible to a heart attack and sudden death when under prolonged emotional and physiological stress and strain or acute emotional and physiological stress than would a person who does not have hypertensive heart disease and any problems involving the coronary arteries. Stress and strain are to be avoided to the fullest extent possible within the reasonable and necessary context of a person's life if it is known that that person has high blood pressure, heart disease associated with the high blood pressure, and probably some degree of arteriosclerosis that further compromises coronary artery blood flow.

In this particular case, I believe that the stress and strain associated with his job by virtue of the twelve consecutive work days contributed directly by aggravating these pre-existing underlying significant disease processes and thereby played a role in producing his death on May 23, 1976.

Dr. Lawrence Brent, a board-certified internist and cardiologist, testified that Mr. Woomer's fatal heart attack was not related to his employment.

The referee made the following pertinent finding of fact:

6. Your referee finds as a fact that on May 23, 1976, the Decedent died as a direct result of the job-induced nervous tension, insomnia and emotional distress which aggravated pre-existing hypertensive and coronary artery diseases and resulted in his death. Decedent's heart was compromised by virtue of longstanding high blood pressure and arteriosclerosis, and this disease process was aggravated by the stress imposed by Decedent's work schedule, and its attendant side effects to the point where it caused and resulted in his death.

The board affirmed.

General Electric contends that, despite our Supreme Court's decision in *Krawchuk v. Workmen's Compensation Appeal Board,* 497 Pa. 115, 439 A.2d 627 (1981), we should rule, as a matter of law, that the passage of thirty-three hours between an employee's last hour of work and the initial manifestation of his myocardial infarction precludes a finding of causation. Without a legal limitation pertaining to remoteness of time, General Electric submits that, with every conceivable job involving some type of stress, a heart attack victim would be assured of recovering benefits so long as a physician testified that the claimant's work was a cause of illness.

In *Krawchuk,* our Supreme Court observed:
Not infrequently, a stress heart attack is a gradual injury wherein the pressures and strain of the job—physical, mental or both—take their toll in small doses until, at some point, those doses in the aggregate push the heart past its limits. That such point happens to manifest itself at the victim's home is irrrelevant *except* insofar as the location of the final onslaught

*might* have some bearing in a given case on whether the injury arose in the course of employment and was related thereto.

. . . .

The location should be, therefore, merely a *factor* for the referee to consider. (Emphasis in original.)

*Id.* at 123, 124, 439 A.2d at 631, 632.

Although stating its conclusion in terms of place, rather than time, the Court clearly addressed the issue which General Electric now raises. The passage of time is merely a factor for the referee to consider under section 301(c); it is not a question of law for our court to decide. Thus, based upon competent evidence, a referee could find that a stress heart attack was too remote in time and place from the victim's work to have arisen in the course of, and be related to, his employment. We therefore disagree with General Electric's contention that any heart attack suffered by an employee is compensable. *See, e.g., Marincov v. Workmen's Compensation Appeal Board,* 71 Pa. Commonwealth Ct. 194, 454 A.2d 670 (1983) (referee accepted competent medical testimony as basis for rejecting surviving spouse's argument that husband's heart attack resulted from employment).

General Electric also contends that substantial evidence of record does not support the referee's finding that Mr. Woomer died "as a direct result of . . . job-induced nervous tension, insomnia and emotional distress." Specifically, General Electric submits that there is no evidence to suggest that these conditions were job-induced. We disagree.

Mrs. Woomer clearly established the link between her husband's increased workload and the deterioration of his health, by testifying as follows:

Q. Did this twelve, eight-hour day in a row schedule have any effect on your husband that you could notice?

A. Yes. It made him real tired and he wasn't sleeping well and he was nervous and . . .

Q. How long did you notice your husband in this condition, this nervous condition?

A. Well, after he worked about five days straight.

Q. So the last week you testified he would not sleep well and would be nervous?

A. Yes, sir. That's right.

Because we perceive no errors of law in the board's opinion, and because substantial evidence of record supports the challenged finding of fact, we affirm.

ORDER

Now, December 14, 1983, the order of the Workmen's Compensation Appeal Board, No. A-81862, entered April 29, 1982, is affirmed.