Paul Klein, Petitioner *v.* Workmen's Compensation Appeal Board (Plaza Home Center, Inc., and St. Paul Fire & Marine Insurance Company), Respondents.

Submitted on briefs June 4, 1985, to Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*John E. O'Connor,* for petitioner.

*Z. R. Bialkowski, Jr.,* with him, *Chester F. Dudick, Jr.,* for respondents, Plaza Home Center, Inc., and St. Paul Fire & Marine Insurance Company.

OPINION BY JUDGE CRAIG, August 21, 1985:

In this appeal from the Workmen's Compensation Appeal Board by claimant Paul Klein, the central question is whether the referee's denial of benefits, affirmed by the board, was based upon a capricious disregard of evidence by the referee, who concluded that the cause of the claimant's mental disability arose, not from the claimant's employment as chief

executive officer of the financially distressed defendant Plaza Home Center, Inc., but instead came from the threat of financial loss in connection with his ownership interest, if any, in the corporation.

Work-related mental illness is an injury under section 301(c) of The Pennsylvania Workmen's Compensation Act,[1] *University of Pittsburgh v. Perlman,* 49 Pa. Commonwealth Ct. 347, 405 A.2d 1048 (1980), but, to be work-related, the mental injury of course must stem from the claimant's functioning as an employee, not from circumstances which the claimant encounters in another capacity.

Summarized, the referee's key findings (numbered as indicated in the parentheses following each finding) were as follows:

The claimant created the defendant corporation, which "was wholly owned by him." (4) The defendant corporation had immediate notice of psychiatric injury to the defendant because the knowledge of the claimant, as president of the corporation, was therefore within the knowledge of the defendant. (6)

In late 1978, with the corporation having financial difficulties, the claimant discussed bankruptcy with an attorney who suggested delay of the matter. (7) While later conferring with that attorney concerning the bankruptcy matter in January of 1979, the claimant developed a skin rash or neurodermatitis, which reappeared in subsequent times of stress related to the financial difficulties. (9) A medical injection for that rash put the claimant in shock, requiring two days' hospitalization in January, 1979. Starting in 1979, and continuing thereafter, the claimant had personality changes and difficulties with respect to energy, sleeping, memory and concentration. (11) A physician recommended psychiatric consultation. (12)

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(1).

Nevertheless, in April of 1979, the claimant launched a new corporate business, selling wood stoves, with himself as president, doing some work without pay. (13)

The defendant Plaza Homes Center's assets were liquidated in May of 1979. (14) The claimant's treatment by a psychiatrist began in January of 1981. (15)

Medical testimony affirmed that the claimant had a long-standing anxiety state before 1979. The failure of the defendant corporation precipitated the claimant's physical and psychological disability, which has been total since January 9, 1979. (16)

The referee's crucial finding was that the cause of the disability was not the claimant's employment relationship but his investment of money, time and personal esteem in it. (17)

Accordingly, the referee's conclusions of law dismissed the claim on the basis that the employment relationship was not the cause of the disability.

Although the claimant's brief states that the claimant "has originally accepted findings 4, 11 and 17, as well as the conclusions of law," the intended meaning is apparently that the claimant takes exception to those findings—contending that there is no proof of the claimant's ownership of the corporation as stated in the fourth finding, and that the evidence shows that the employment, not entrepreneurial ownership interest as stated in the seventeenth finding, caused the disability. Although the claimant disputes the referee's failure in the eleventh finding to mention the claimant's pre-1979 anxieties, the brief acknowledges that the referee noted the longstanding pre-1979 anxiety state in the sixteenth finding. In every other respect, the findings are undisputed.

Of course, as to the findings, our scope of review turns on whether or not they were based on a capri-

cious disregard of competent evidence. *Workmen's Compensation Appeal Board v. Precisionware,* 21 Pa. Commonwealth Ct. 573, 347 A.2d 916 (1975).

Thus we reach the question of whether the referee capriciously disregarded evidence in concluding that the undoubted psychiatric injury arose from an ownership interest rather than from the employment relationship.

Scrutiny of the record discloses no evidence that the claimant wholly owned the defendant corporation. Nevertheless, the entire record reflects, as an accepted fact, that the claimant did have an ownership interest in the corporation and that his ownership was a substantial one. The claimant's key medical witness, Dr. Slovak, testified, as to the claimant:

> Now, the difference in his business and the difference in his business functioning that took place at Plaza Homes was a crucial difference in terms of that *this was his own personal investments,* not somebody to whom he was consulting. *He not only had money but* also, he had a great deal of his own personal esteem, narcissism tied up in this business; *he had invested himself as a person in this business.* (Emphasis added.)

At another juncture, the same witness stated that

> the failure of Mr. Klein's personal business was a major precipitating facet of his physical and psychological dysfunction. . . .

Finally, Dr. Slovak testified as follows:

> Q Doctor, how did the effect of the bankruptcy and the stress involved related to Paul Klein's ability to handle stress?
>
> A The bankruptcy related to business which was part of Mr. Klein, it was something that was his. It was his own creation. He put a

great deal of himself into it. He was unable to escape or avoid the circumstances that led up to the bankruptcy.

Although the fact of substantial ownership involvement thus entered the record by way of the medical testimony, there was no objection on behalf of claimant to such proof, whether from his own witness Dr. Slovak or from the defendant's doctor, who included in his history statement two references to the claimant starting his own business.

Totality of ownership interest was not crucial to the referee's conclusion that the claimant's disability ensued from business failure involving him as claimant rather than as employee. Despite the absence of evidence indicating sole ownership, the record does not establish that the referee deliberately—that is, capriciously—disregarded apparently trustworthy and competent evidence of a nature unchallengeable by a person of ordinary intelligence. *Tady v. Workmen's Compensation Appeal Board (Republic Steel Corp.),* 86 Pa. Commonwealth Ct. 582, 485 A.2d 897 (1985).

As the board decision correctly noted, the referee's findings and conclusions were founded on his acceptance of the testimony of the claimant's medical witness. Taken in its specific elements and in its entirety, that testimony—illustrated by the passages quoted above—provided at least as much basis for the referee's ultimate finding as it did for any contrary finding to the effect that the employee relationship was the cause.

The claimant has also preserved an objection to the board's refusal to allow the taking of additional evidence pursuant to the claimant's offer to show that the defendant's medical expert later testified to contrary effect in a social security hearing. As the board decision noted, the referee accepted the testimony of the claimant's medical testimony and rejected the

medical opinions presented for the defendant. Board Chairman Fergus well stated:

> It would be an exercise in redundancy to allow further evidence to either impeach a doctor the Referee has already rejected or to prove he agreed with a doctor whose testimony as a matter of law does not establish a work-connected disability.

Accordingly, the decision is affirmed.

### ORDER

Now, August 21, 1985, the decision of the Workmen's Compensation Appeal Board at A-85077, dated January 5, 1984, is affirmed.