520 A.2d 545

Globe Security Systems Co., and National Union Fire Insurance Company, Petitioners *v.* Workmen's Compensation Appeal Board (Guerrero), Respondents.

Argued October 7, 1986, before President Judge CRUMLISH, JR., Judge DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Fred C. Trenor, Meyer, Darragh, Buckler, Bebenek & Eck,* for petitioners.

*Barbara Ernsberger, Behrend, Morrow, Ernsberger & Moran,* for respondents.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., January 29, 1987:

Globe Security Systems Company (Globe) appeals a Workmen's Compensation Appeal Board (Board) order upholding a referee's decision granting fatal claim benefits to Roberta Guerrero, widow of Jorge Guerrero, under Section 301(a) of The Pennsylvania Workmen's Compensation Act (Act).[1] We affirm.

Guerrero, a security guard at a state liquor store, was attempting to guard two purported thieves when he drew his gun and accidentally shot one of the suspects in the neck.[2] Immediately thereafter, Guerrero shot himself in the head and died.

The referee found that shooting the alleged suspect triggered a mental disturbance (an acute psychotic episode) which caused Guerrero to take his own life.

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §431, defines work-related injury:

> Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employe, without regard to negligence, according to the schedule contained in sections three hundred and six and three hundred and seven of this article: *Provided, That no compensation shall be paid when the injury or death is intentionally self inflicted,* or is caused by the employe's violation of law, but the burden of proof of such fact shall be upon the employer. . . .

(Emphasis added.)

[2] The referee found that two men entered the liquor store and some confusion was created as to whether this was a robbery. The two men and the decedent went outside; Guerrero pulled out his gun, pointed it at the throat of one of the men, and the gun discharged.

The board concluded that there was a sufficient factual basis for finding that Guerrero's suicide was not intentionally self-inflicted.[3] The Board also accepted the referee's finding that Roberta Guerrero and Jorge Guerrero were engaged in a common-law marriage when he died.[4]

This Court has previously held that suicide may be compensable under the Act provided that the suicide is a direct result of a work-related mental illness. *Allegheny Ludlum Steel Corp. v. Workmen's Compensation Appeal Board (Fisher),* 91 Pa. Commonwealth Ct. 480, 498 A.2d 3 (1985). To be work-related, the mental injury must stem from the decedent's function as an employee, not from outside circumstances. *Klein v. Workmen's Compensation Appeal Board (Plaza Home Center, Inc.),* 91 Pa. Commonwealth Ct. 247, 496 A.2d 1346 (1985).

In *McCoy v. Workmen's Compensation Appeal Board (McCoy Catering Services, Inc.),* 102 Pa. Commonwealth Ct. 436, 518 A.2d 883 (1986), we recently adopted a "chain of causation" test to be applied in Section 301 suicide cases. Under this test, compensation will be granted if a suicide is caused by pain, depression or despair resulting from a work-related injury so severe as to override rational judgment.[5]

---

[3] Workmen's Compensation Appeal Board order (Reproduced Record, pp. 24a-25a).

[4] Referee findings # 2g, 13, 14 (Reproduced Record, pp. 295a-296a).

[5] To be entitled to receive compensation under this test, a claimant must prove that (1) there was initially a work-related injury, (2) the injury directly caused the employee to become dominated by a disturbance of the mind so severe as to override normal rational judgment, and (3) the disturbance resulted in suicide.

Globe initially contends that the medical evidence was insufficient to support the conclusion[6] that Guerrero had sustained a mental injury simply because he committed suicide. We disagree.[7]

Roberta Guerrero presented competent medical evidence[8] which showed that her husband had a "combat-like"[9] reaction to his shooting of the intruder and suffered an acute psychotic episode resulting in suicide. The referee has a duty to weigh the evidence and he may accept or reject expert medical testimony. *Hoffman v. Workmen's Compensation Appeal Board (Mitchell Transport, Inc.)*, 87 Pa. Commonwealth Ct. 44, 485 A.2d 1235 (1985). We hold that the referee's finding that Jorge Guerrero suffered a work-related injury which resulted in his suicide is supported by substantial medical evidence.

Globe also disputes the referee's finding[10] that there was a common-law marriage between Roberta and Jorge because their legal marriage had previously ended in divorce. The general rule for a common-law marriage is

---

[6] Under *University of Pittsburgh v. Workmen's Compensation Appeal Board*, 49 Pa. Commonwealth Ct. 347, 405 A.2d 1048 (1979), a claimant must prove that the decedent sustained a physical or a mental injury during the course of his employment which caused him to commit suicide and not be held legally responsible.

[7] Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence and whether the referee committed an error of law or violated any constitutional rights. Section 704 of the Administrative Agency Act, 2 Pa. C. S. §704. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 383, 517 A.2d 523, 525 (1986).

[8] The referee found Dr. Thompson's testimony more credible. Referee findings no. 9 and 10 (Reproduced Record, p. 296a).

[9] In affirming the referee, the Board opined from Dr. Thompson's testimony that Guerrero's reaction to the shooting was similar to that observed of soldiers in times of war. (Reproduced Record, pp. 295a-296a).

[10] Referee findings no. 13, 14, 15, 16 (Reproduced Record, p. 296a).

that a nonceremonial marriage comes into existence by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife. *Commonwealth ex rel. McDermott v. McDermott,* 236 Pa. Superior Ct. 541, 345 A.2d 914 (1975). However, *Fragapane v. Fragapane,* 131 P.L.J. 421 (1983), elucidates the law of common-law *remarriages:* "[T]he law's role of mere toleration of the common law relationship should be reversed and the status of remarriage favored, even if acquired with common law informality." (Citing *McDermott.)* The intent of the parties to enter a common-law remarriage may be expressed in other, nonverbal ways. *Fragapane.*

We hold that the referee's finding that a common-law *remarriage* existed when Guerrero died is supported by substantial evidence.[11]

Accordingly, we affirm the order of the Workmen's Compensation Appeal Board.[12]

ORDER

The Workmen's Compensation Appeal Board order, No. A-84931 dated September 27, 1984, is affirmed.

---

[11] The record contains substantial testimony from the Guerreros pertaining to such nonverbal expressions of intent. Guerrero and his widow were married on August 12, 1976, and divorced on June 1, 1977. They continued to live together during and after their divorce, held themselves out as husband and wife and filed a loan application as a married couple. Further, the decedent listed claimant as living at his address and the person to contact in case of emergency. The claimant bore him a child on November 1, 1977.

In addition, Guerrero's former wife, Jean M. Guerrero, testified that Roberta and Jorge Guerrero were living as husband and wife when he died.

[12] The Board awarded benefits to Roberta Guerrero and her son, Randolph Jorge Guerrero, as well as Guerrero's three children borne of his former marriage to Jean M. Guerrero.