601 A.2d 439

**WASHINGTON FOOD SPECIALTIES, INC. and Kansas City Fire & Marine Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (MARY BRITKO), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 11, 1991.

Decided Dec. 19, 1991.

Reargument Denied Feb. 24, 1992.

Eric P. Betzner, for respondent.

Before CRAIG, President Judge, PELLEGRINI, J. and BARRY, Senior Judge.

BARRY, Senior Judge.

Washington Food Specialties, Inc. (WFS) appeals an order of the Workmen's Compensation Appeal Board (the Board) which affirmed a referee's decision awarding disability and death benefits to Mary Britko, claimant and widow of Edward Britko (Britko). WFS contends that the referee and the Board erred as a matter of law in concluding that both heart attacks suffered by Britko were causally connected to work related stress. WFS also urges us to adopt a causal requirement of abnormal working conditions in stress related heart attack cases. We reject both arguments and affirm.

The facts of this case as found by the referee are as follows. WFS is owned by the Britko family and was incorporated in 1980. Britko was employed as president of WFS on February 22, 1984 when he suffered a heart attack which totally disabled him until September 30, 1984. Britko returned to work for WFS on that date in a limited role and suffered a fatal heart attack on July 22, 1985. Dr. Fagioletti, Britko's treating physician, testified that Britko suffered from work related stress which was a factor in causing both the 1984 and the 1985 heart attacks. (Fagioletti Deposition [F.D.], at pp. 15–17, 50–51). Dr. Fagioletti also testified that the fatal 1985 heart attack was related to a progression of the disease process from the prior 1984 attack. (F.D., at p. 50). Dr. Hurwitz, testifying on behalf of WFS, stated that the 1985 heart attack was a direct result of the 1984 attack; further that the stress Britko suffered was in no way causally connected to either attack. (Hurwitz Deposition, at pp. 17, 19). The referee made specific findings as to the cause of each heart attack: work related stress caused the February 22, 1984 attack; the second, fatal, heart attack was caused by the first heart attack and was not causally connected to stress from Britko's return to work for WFS. This finding on causation is crucial because two separate insurance carriers insured WFS at the time of each heart attack. The referee's finding makes the carrier at the

time of the 1984 heart attack liable for both the disability and death benefits.

Our standard of review in this case is clear. We will examine the record to determine whether constitutional rights have been violated, an error of law has been committed, or necessary findings of fact are supported by substantial evidence. *Monaci v. Workmen's Compensation Appeal Board (Ward Trucking)*, 116 Pa.Commonwealth Ct. 172, 174, 541 A.2d 60, 62 (1988). The referee may accept or reject the testimony of any witness, in whole or in part. *Walzer v. Workmen's Compensation Appeal Board (Globe Security, Inc.)*, 69 Pa.Commonwealth Ct. 468, 473, 451 A.2d 799, 802 (1982).

■ WFS attacks the referee's finding that the fatal heart attack was work related on three fronts. Initially, WFS asserts that the evidence indicates that the stress Britko suffered from was entrepreneurial and family related rather than work related. As noted above, Dr. Fagioletti testified that Britko suffered from work related stress in 1984 which was a major factor in causing the first heart attack. Dr. Fagioletti admitted that the work related stress Britko suffered from also impacted him in his capacity as head of the family, especially because the business was family owned. (F.D. at 17). WFS concludes that this testimony dictates a finding that the stress Britko suffered from was not work related within the meaning of Section 301(c) of The Pennsylvania Workmen's Compensation Act. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 411(1). We disagree.

WFS relies upon *Klein v. Workmen's Compensation Appeal Board (Plaza Home Center, Inc.)*, 91 Pa.Commonwealth Ct. 247, 496 A.2d 1346 (1985) and *McCoy v. Workmen's Compensation Appeal Board (McCoy Catering Services, Inc.)*, 102 Pa.Commonwealth Ct. 436, 518 A.2d 883 (1986), *petition for allowance of appeal denied*, 517 Pa. 595, 535 A.2d 84 (1987), as establishing that all stress suffered by the owner-employee of a family owned corporation is entrepreneurial and family related, not work related

and thus, cannot cause a work related, compensable injury. We find those cases distinguishable. Both *Klein* and *McCoy* deal with stress caused mental injuries and are in the so-called psychic cause/psychic injury or mental cause/mental injury category of claims. *Klein*, 91 Pa.Commonwealth Ct. at 249, 496 A.2d at 1347; *McCoy* at 441, 518 A.2d at 885. Here we are presented with a stress induced heart attack, a psychic cause/physical injury claim. Once a causal connection between a heart attack and employment duties is established, compensation follows. *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 121–24, 439 A.2d 627, 630–32 (1981). We will not extend application of the *Klein* and *McCoy* reasoning concerning psychic cause/psychic injury or mental cause/mental injury to the facts of ·this case.[1]

 WFS also argues that Dr. Fagioletti's testimony is equivocal. The equivocality of a medical opinion is a question of law, fully reviewable by this Court. *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board (Tompkins)*, 66 Pa.Commonwealth Ct. 579, 581, 445 A.2d 843, 845 (1985). WFS asserts that Dr. Fagioletti's admission that Britko did not discuss all the sources of his stress renders the Doctor's opinion equivocal. Dr. Fagioletti did testify that Britko had a family problem which he did not specifically identify. (F.D. at 16). Dr. Fagioletti went on to state that, although not specifically identified, this problem was involved in the operation of the family business. (F.D. at 17). That Britko did not specify *all* the sources of this stress to Dr. Fagioletti does not render the doctor's opinion

1. WFS also calls our attention to *Kemp v. Workmen's Compensation Appeal Board (Elkland Electric Co.)*, 121 Pa.Commonwealth Ct. 23, 549 A.2d 1365 (1988) *petition for allowance of appeal denied,* 523 Pa. 652, 567 A.2d 655 (1989). *Kemp* is also distinguishable as another psychic cause/psychic injury case. Further, the crux of the *Kemp* decision is the claimant's failure to show abnormal working conditions. *Id.* 121 Pa.Commonwealth Ct. at 27, 549 A.2d at 1367. The *Kemp* Court's discussion of the claimant's physical symptoms being caused by anxiety over the future instead of work related stress is clearly *dicta* because the claim petition alleged psychic injury, not physical injury. *Id.,* 121 Pa.Commonwealth Ct. at 24, 549 A.2d at 1366.

that work related stress caused the first heart attack equivocal.

WFS's final attack on the referee's findings asserts that substantial evidence does not support the chain of causation accepted by the referee for the second fatal heart attack. Again we disagree. The referee found that work related stress caused the first heart attack and that the second, fatal heart attack was a direct result of the first attack. The referee also expressly excluded work related stress as a cause of the second heart attack. The testimony outlined above supports this finding. Dr. Fagioletti testified that work related stress was a major contributing cause to both heart attacks and that the first heart attack was a contributing factor to the second. Dr. Hurwitz stated that the second heart attack was a direct result of the first. There was also testimony that Britko returned to work in only a limited role following the first heart attack. The referee was free to accept Dr. Fagioletti's testimony that work related stress caused the first heart attack and Dr. Hurwitz's testimony that the first heart attack caused the second attack. *Walzer*, 69 Pa.Commonwealth Ct. at 473, 451 A.2d at 802. WFS noting that the referee credited Dr. Hurwitz's testimony only where consistent with Dr. Fagioletti's does not fatally flaw this analysis as both doctors stated that the 1984 heart attack was a contributing factor to the fatal 1985 heart attack. Thus, substantial evidence supports the referee's finding regarding the cause of the July 22, 1985, fatal heart attack.

As a final issue, WFS urges us to require claimants to show that abnormal working conditions gave rise to the stress which causes a heart attack before compensation is allowed. WFS cites us to a number of heart attack cases where the claimants offered evidence of excessive stress which caused the heart attack. Unquestionably, a showing of overwhelming stress is an effective method of proving the necessary causal connection; it is not, however, a prerequisite to recovery. Abnormal working conditions are a requirement in psychic cause/psychic injury claims only.

Just as we refuse to extend the reasoning of the *Klein* and *McCoy* cases to stress induced heart attack cases, we refuse to require a showing of abnormal working conditions before awarding compensation for these type of claims. Moreover, our Supreme Court has held that a claimant need only show a causal connection between work stress and a heart attack. *Krawchuk*, 497 Pa. at 125, 439 A.2d at 632 (victim's normal work, as well as special projects, constituted stress, rendering stress induced heart attack compensable). As an intermediate appellate court, we are powerless to impose a more stringent requirement concerning abnormal working conditions in stress induced heart attack cases.

Affirmed.

## ORDER

NOW, December 19, 1991, the order of the Workmen's Compensation Appeal Board, dated, November 30, 1990, at No. A–97514, is affirmed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The majority erred in holding that the cumulative effects of having a hectic job for 27 years first as owner of a company, then as President, is sufficient causation to establish that a heart attack was work-related. Moreover, it did so without support of the necessary medical testimony that the injury was a result of the employee's work.

From 1957 to 1980, the decedent, Edward Britko (Britko) was the owner of Washington Food Specialties Company (Washington Foods), a family-owned business which sold snack foods to various retail establishments in Washington and Greene counties. In 1980, the business was incorporated with Britko as President and other members of the family holding the other corporate offices. Before and after the incorporation, Britko's duties remained the same: "ordering inventory, keeping books, unloading tractor trail-

ers, seeing that the trucks got out everyday and seeing that they were in running order." (R. 10a).

On or about February 1, 1984, Britko "retired" from full-time employment with Washington Foods and worked part-time for which he was paid approximately $100 per week. He remained as President, however, and continued to perform his usual duties.

On February 22, 1984, while on a weekend pleasure trip, Britko suffered an acute myocardial infarction. In August of 1984, Britko had bypass surgery, and after his recovery, he returned on October 1, 1984, as a part-time consultant. During his disability, he relinquished the presidency of Washington Foods, and, together with Britko's son-in-law, assumed management responsibility of the business. After he returned to work, Britko's duties were "slight." After returning from another weekend pleasure trip, on July 22, 1985, Britko had a second and fatal acute myocardial infarction.

Claimant, widow of Britko, filed a claim for disability benefits from February 22, 1984 to September 30, 1984, for the period Britko was disabled as a result of his first myocardial infarction, as well as a fatal claim seeking death benefits from July 22, 1985. Claimant alleges that both of Britko's myocardial infarctions were caused by the emotional stress, strain and anxiety of his job.

The emotional stress that Claimant contends caused both heart attacks was the hectic nature of the business in general, as well as financial pressures that Britko perceived as a result of his efforts to bring his son-in-law into the management side of the business. Beginning in 1980, Britko had sporadic negotiations with the wholesaler from whom Washington Foods purchased its products. Britko was attempting to eliminate the wholesaler and purchase directly from the manufacturer, to increase his profitability, thereby making it possible to bring his son-in-law into "management" and relieve him of his truck driving duties. None of the meetings Britko had with the wholesaler apparently ever went well, and Britko had meetings with the

wholesaler shortly before he suffered his initial heart attack in 1984 and his fatal heart attack in 1985.

Because neither the majority, the Board nor the Referee mention these negotiations, apparently they find that if you have a hectic job, that alone is sufficient to establish causation for a myocardial infarction. The majority justifies this position by distinguishing *Klein v. Workmen's Compensation Appeal Board (Plaza Home Center, Inc.)*, 91 Pa.Commonwealth Ct. 247, 496 A.2d 1346 (1985) and *McCoy v. Workmen's Compensation Appeal Board (McCoy Catering Services, Inc.)*, 102 Pa.Commonwealth Ct. 436, 518 A.2d 883 (1986), *petition for allowance of appeal denied*, 517 Pa. 595, 535 A.2d 84 (1987), cited by the employer as only involving psychic injury rather than psychic cause/physical injury that we have in this case. However, an examination of the issues dealing with stress-induced heart attacks requires that the stress needed to establish a work-related injury has to be more than merely having a hectic job.

In *Krawchuk v. Pennsylvania Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1982), our Supreme Court held that off-premises heart attacks were compensable if the claimant could establish that it arose out of his employment and that it was work-related. Because the Supreme Court in *Krawchuk* found that the claimant was under stress "from his normal work, the special project known as 'PMS4' and the treatise that he was to deliver in California all constituted stress" rendering his off-premises heart attack compensable. 497 Pa. at 125, 439 A.2d at 632.

All reported cases since *Krawchuk* involving stress-induced heart attacks also involved something more than merely having a hectic job. Each had an episode or incident of stress that could be pinpointed as inducing the work-related heart attack. *See Township of Haverford v. Workmen's Compensation Appeal Board (Angstadt)*, 118 Pa.Commonwealth Ct. 467, 545 A.2d 971 (1988) (police chief yelling at decedent for 45 minutes, afterward decedent, very pale, shaken and upset); *First National Bank of Dunmore v. Workmen's Compensation Appeal Board*

*(Trotta)*, 110 Pa.Commonwealth Ct. 370, 532 A.2d 526 (1987); *petition for allowance of appeal denied*, 519 Pa. 661, 546 A.2d 623 (1988) (decedent was under stress because he was establishing a new branch bank); *Boeing Vertol Company v. Workmen's Compensation Appeal Board (Coles)*, 107 Pa.Commonwealth Ct. 388, 528 A.2d 1020 (1987) (claimant testified that he had at least a dozen incidents of stress with supervisors that caused him to leave work prior to his heart attack); *Yuhas v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 82 Pa.Commonwealth Ct. 390, 476 A.2d 1377 (1984) (decedent was under stress because he was working on budget when he was on the phone with his supervisor who was telling him that the only typist in the office was being transferred away from decedent); *General Electric Company v. Workmen's Compensation Appeal Board (Woomer)*, 79 Pa.Commonwealth Ct. 91, 468 A.2d 885 (1983) (decedent had been on extended work schedule when he suffered a heart attack); *Rizzo v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 69 Pa.Commonwealth Ct. 92, 450 A.2d 291 (1982) (heating engineer was under severe stress to save heating costs as a result of the 1975 energy crisis when he suffered fatal heart attack).

Requiring a claimant to pinpoint an episode of stress, rather than merely stating that his job was stressful or hectic to establish that a heart attack was work-related, is obvious—a certain amount of stress is an integral part of one's daily life. Marriage, parents, children, bosses, employees, as well as commuting and work itself, all involve stress—it's part of the normal wear and tear of life. To say that having a hectic job for 27 years caused a work-related heart attack is like saying "While working, I aged 27 years which caused my heart attack." The inherent stress of every job is insufficient to establish the work-relatedness of a heart attack.

Because work is inherently stressful (or we would call it "play") and to avoid making mere work sufficient causation to establish a work-related heart attack, we have consistent-

ly held that an episode of stress must be pinpointed as the cause of the work-related injury. However, while the stress has to be pinpointed, it does not have to be "abnormal" for that type of job as in mental/mental cases. *See Martin v. Ketchum*, 523 Pa. 509, 568 A.2d 159 (1990). For example, a police officer involved in a dangerous arrest may suffer from stress which is "normal" for that job, but that stress still may be sufficient to cause a heart attack that would be compensable. We do not have that type of episode here.

Even if the Referee found that Britko's unsuccessful negotiations with Washington Foods' wholesaler were sufficiently stressful to cause his heart attacks, those negotiations were not in his "employee" capacity, and hence, "work-related," but instead, were "entrepreneurial and family related." Britko's concern in those negotiations was to increase profitability in order to bring his son-in-law into management so that he would no longer have to drive a truck on one of Washington Foods' distribution routes. We have previously held that entrepreneurial and family-related reasons are insufficient to establish the work-relatedness of an injury, *albeit* in a mental/mental case. *McCoy v. Workmen's Compensation Appeal Board (McCoy Catering Services, Inc.)*, 102 Pa.Commonwealth Ct. 436, 518 A.2d 883 (1986).

Claimant also had the burden to prove through medical testimony that Britko's heart attacks were actually caused by stress at work. *Chadwick v. Workmen's Compensation Appeal Board (Benjamin Franklin Hotel)*, 132 Pa.Commonwealth Ct. 525, 573 A.2d 652 (1991). Britko's treating physician, Dr. Albert J. Fagioletti, and only medical witness, never stated that the stress which he testified caused the heart attack was work-related. On direct examination, Dr. Fagioletti testified:

Q. Doctor, in your opinion within reasonable medical certainty, what would have been the primary focus or focal point of the stress, in your opinion?

A. There seems to be something about the situation that he was unwilling to discuss with me. I frankly asked him and he refused to tell me what it was.

Q. When you say about the situation ...

A. Well, I think there is a family problem involved or something. He kept referring to something would get better. Nobody ever explained it totally but there was something he was very much concerned about and worried about.

(R. 83a).

With reference to stress Britko experienced after returning to work, Dr. Fagioletti testified:

Q. You have indicated that you believe that there was stress after his return to work.

A. Yes.

Q. But that you never knew the exact nature of that stress?

A. Correct.

Q. And it was your belief that it was somehow familially related with the family and related with the business?

A. Yes.

Q. But you have no way of knowing that for sure; is that correct?

A. Yes.

Q. You know that he was under stress but you don't know the cause of that stress?

A. Correct.

(R. 120a).

Moreover, Dr. Fagioletti was not presented with any hypothetical questions regarding Britko's working conditions, duties, responsibilities or events leading to his death, nor did he have any personal knowledge of Britko's work-related stress that would allow him to tie that stress to the heart attack. Because Claimant failed to establish the requisite causation between Britko's work and his heart attacks, I would reverse.