Widdis, Appellant, *v.* Collingdale Millwork Company.

Argued September 25, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUNTHER, J., absent).

*Maurice S. Levy,* for appellant.

*Paul H. Ferguson,* for appellees.

OPINION BY HIRT, J., November 15, 1951:

In this action claimant sought a compensation award for the death of her husband. Admittedly he

committed suicide by shooting himself on November 9, 1947, and the defendant employer therefore was relieved of the burden (otherwise imposed by the Act of June 21, 1939, P. L. 520, 77 PS §431, amending the Workmen's Compensation Act) of showing that his death was intentionally self-inflicted. In the light of the admission, claimant, as a basis for an award, was obliged to prove that her husband suffered an accident in the course of his employment and that he "killed himself while possessed by an uncontrollable insane impulse, or while in a delirium, or frenzy, [as a direct result of the accident] without rational knowledge of the physical consequences of his act'': *Lupfer v. Baldwin Locomotive Works,* 269 Pa. 275, 112 A. 458; *Kasman v. Hillman C. & C. Co.,* 149 Pa. Superior Ct. 263, 266, 27 A. 2d 762.

Decedent suffered an accident. On November 3, 1947, in the course of his employment, parts of the index and middle fingers of his right hand were amputated by a cutting machine in defendant's plant. It was claimant's contention that, following the injury and because of it, decedent became melancholy and obsessed with the illusion that he would never be able to hold a job again, and that he took his life in a fit of depression without realizing the consequences of his act. The Referee accepted the testimony of claimant to that effect and entered an award. The Board, however, in reversing, substituted this basic finding for that of the Referee: "The Workmen's Compensation Board finds as a fact that decedent was rational at the time he committed suicide, that he understood the consequences of his act". On this finding the Board concluded "as a matter of law that since decedent committed suicide, intentionally and while rational, no compensation is due claimant". Accordingly her claim petition was dismissed and on appeal the lower court entered judgment for the defendant.

Four notes written by decedent shortly before his death were offered in evidence for the purpose of indicating his state of mind when he committed suicide. The notes were admitted for that single purpose alone. There is no merit in claimant's contention that the notes were hearsay and should have been rejected. They, however, were not admissible, as the Board found, as a part of the res gestae. In strictness res gestae does not apply but the notes were admissible in evidence not as proof of their contents but as disclosing the state of mind of the decedent which impelled him to take his life. *Commonwealth v. Williams,* 307 Pa. 134, 144, 160 A. 602; *Commonwealth v. Santos,* 275 Pa. 515, 521, 522, 119 A. 596; *Ryman's Case,* 139 Pa. Superior Ct. 212, 221, 222, 11 A. 2d 677. It is of no moment that the notes were received in evidence on a wrong theory since they were properly before the Board for the limited purpose of their admission.

Both of the medical experts, one of whom testified for claimant and the other for the defendant, took into consideration the four 'suicide notes'. Dr. Ely Marcovitz, called by the claimant, was of the opinion in the light of all the circumstances, that decedent had no rational control over his actions and that he would not have committed suicide except for his emotional reaction to the injury to his hand suffered in the course of his employment with the defendant. The Board ignored the opinion of claimant's medical expert, as it had the right to do in the exercise of its function as the ultimate fact finding tribunal (*Walsh v. Penn Anth. Mining Co.,* 147 Pa. Superior Ct. 328, 24 A. 2d 51; *Bartman v. Jones & Laughlin,* 163 Pa. Superior Ct. 31, 60 A. 2d 565) and accepted the opinion of defendant's witness, Dr. Joseph C. Yaskin, to the effect that there was no causal relationship between the amputation of decedent's fingers and the taking of his own life. In arriving at that conclusion Dr.

Yaskin placed emphasis on the four notes written by decedent as evidencing his state of mind which impelled him to take his life.

There is competent evidence, which the Board accepted, to this effect: Decedent had been working for the Pennsylvania Railroad in congenial employment as a conductor or trainman for the period of about 20 years prior to 1945. At the solicitation of one Adams he then terminated his relationship with the railroad and accepted employment as a woodworker with a partnership in which Adams had an interest. He remained in that employment for about one year. He then left for the reason that he was dissatisfied with his job and went to work for defendant Collingdale Millwork Company. Because his employment with these two concerns had not met his expectations he was constantly worrying and brooding about the future, and throughout the period of two years prior to his death was mentally depressed because he had quit his job with the railroad, which in retrospect seemed to be a tragic error in judgment. In one of the notes, written by decedent immediately before killing himself, and addressed to his three sons he stated: "I don't want to leave you but life has been empty for the past 2 years for me . . ." A second note was addressed to claimant in which he protested his affection for her throughout the 20 years of their married life. A third note addressed to George Adams contains this language: "Please Geo. don't do to another one like you have done to me. If only you had left me alone instead of hounding me I would have been on the R R and been happy. Please use your mighty personality and lying tongue for the good of your fellow man and not your own profit like you did to me. You robbed me with your wonderful personality of my happiness and desire to live". The fourth note, addressed "To whom it may concern", contains this statement: "If Geo. Adams

will only take my advise I have not gone or lived in vain". It is significant that there is no reference to the accident or his mental reaction to it in any of the notes.

The opinion of the Board contains this discussion based upon the evidence: "Widdis was never delirious or in a frenzy. At most, he was moody and depressed. His actions appear premeditated and planned. The suicide notes do not reveal a deranged mind, but rather a rational one, which had lost courage due to adverse fortunes. In our independent judgment, we do not believe decedent was incapable of knowing the physical consequences of his act; rather, we think he understood the consequence of his contemplated self-destruction, and voluntarily chose those consequences."

There is substantial competent evidence sufficient to support the findings of the Board. Moreover they can be sustained without a capricious disregard of any of the evidence. The findings therefore are conclusive and may not be disturbed by this court even though the record may contain other competent evidence which if accepted would have justified an affirmance of the Referee. *Walsh v. Penn Anth. Mining Co.,* supra. Cf. *Kasman v. Hillman C. & C. Co.,* supra, a similar case involving suicide where an award was refused in the application of the settled basic principle of law.

Judgment affirmed.