**Zimmiski *v.* Lehigh Valley Coal Company et al., Appellants.**

Argued March 5, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Ralph G. Mastriani,* Special Assistant Attorney General, with him *Wilson H. Oldhouser,* Special Assistant Attorney General, and *David Stahl,* Attorney General, for Commonwealth, appellant.

*John A. Gallagher,* with him *Herman E. Cardoni,* for appellee.

OPINION BY RHODES, P. J., April 18, 1963:

This is an appeal from the action of the Court of Common Pleas of Luzerne County in reversing the decision of the Workmen's Compensation Board and entering judgment in favor of claimant appellee.

In this appeal under the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, as amended, 77 PS §1201 et seq., claimant asserts that her husband's death by suicide was caused by and resulted from anthraco-silicosis. Anthony Zimmiski, claimant's husband, was awarded compensation on January 26, 1960, under the Occupational Disease Act on a finding that his total disability was the result of anthraco-silicosis. He received his first compensation check in March, 1960. The record shows that on April 14, 1960, he committed suicide by shooting himself. The present claim was filed on June 20, 1960, by deceased's widow who alleged that her husband's death was the result of anthraco-silicosis.

The referee found: ". . . though decedent prior to his act of suicide was moody and depressed . . . claimant failed to prove medically that the act of suicide was committed while in a delirium or frenzy so that he was without rational knowledge of the physical consequences of his act as a direct result of anthracosili-

cosis, an occupational disease, with which he was afflicted." The Workmen's Compensation Board reviewed the testimony of the expert witness, Dr. J. Franklin Robinson, and affirmed the referee's finding and conclusion to the effect that claimant failed to prove medically that deceased's death, by suicide, was caused by the occupational disease of anthraco-silicosis; the board affirmed the referee's order of disallowance.

On appeal by claimant, the Court of Common Pleas of Luzerne County reviewed at length the expert medical testimony of Dr. Robinson, and concluded that such testimony was sufficiently definite to establish a causal connection between the anthraco-silicosis and the death. The court of common pleas further held that the board should have accepted the testimony of the medical expert as verity, and entered judgment in favor of claimant on the death claim.

The judgment of the court below must be reversed, and the order of the board, affirming the referee, reinstated.

Claimant's evidence showed that her husband's mental attitude changed radically after he received his first compensation check in March, 1960. Prior to severance from his employment in 1959, he appeared to be happy, had many friends, and enjoyed hunting, fishing, and baseball. He had previously been a constable; about a week before his suicide, he buried his constable's cap, badge, and blackjack because he feared the authorities would stop his compensation checks. Deceased's son testified his father became extremely depressed following his retirement under total disability, stating that he was no good and life was not worth living. Deceased was suspicious of his lawyer, and thought the lawyer's use of a tape recorder showed the lawyer was "going to turn him in."

Apparently there are no reported cases in which an award under our Occupational Disease Act has been

sustained on the ground that although death was by suicide it was caused by the occupational disease. It has been held that the death was not intentionally self-inflicted, and the dependents could recover workmen's compensation where claimant showed that deceased " 'killed himself while possessed by an uncontrollable insane impulse or while in a delirium or frenzy, as a direct result of the accident without rational knowledge of the physical consequences of his act.' " *Blasczak v. Crown Cork and Seal Company, Inc.,* 193 Pa. Superior Ct. 422, 424, 165 A. 2d 128, 129.

In the present case the expert testimony of Dr. Robinson, the psychiatrist, who had never examined deceased, was equivocal and conflicting. Dr. Robinson admitted, on cross-examination, that his statement that anthraco-silicosis may have restricted oxygenation, damaging brain tissues and causing psychic depression, was purely "an educated guess." In any event, however, the board was the fact-finding body, and it could have accepted or rejected the testimony of the medical expert. Where the decision of the compensation authorities is against the party having the burden of proof, the question before the court on appeal is whether the findings of fact are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of the competent evidence. *Obzut v. Philadelphia and Reading Coal and Iron Company,* 199 Pa. Superior Ct. 289, 292, 184 A. 2d 381. "Even uncontradicted evidence need not be accepted as true: Kline v. Kiehl, 157 Pa. Superior Ct. 392, 43 A. 2d 616." *Irvin v. Plymouth Meeting Rubber Division Linear, Inc.,* 182 Pa. Superior Ct. 280, 285, 126 A. 2d 491, 494.

A court does not have the right to decide purely factual matters or to substitute its findings for those of the board; its only function is to decide matters of law. *Gill v. Fives,* 170 Pa. Superior Ct. 564, 569, 88

A. 2d 109; *Downing v. Leechburg Mining Company,* 195 Pa. Superior Ct. 574, 580, 171 A. 2d 857.

The courts have no power to reverse the board on a question of fact even when they feel that the weight of the evidence is against the finding made by the board. *Lorigan v. W. O. Gulbranson, Inc.,* 184 Pa. Superior Ct. 251, 254, 255, 132 A. 2d 695.

Judgment of the court below is reversed; the order of the Workmen's Compensation Board disallowing compensation is reinstated.

MONTGOMERY, J., would affirm on the opinion of the court below.

---

DISSENTING OPINION BY FLOOD, J.:

The Pennsylvania Occupational Disease Act provides for compensation for death resulting from occupational disease occurring within four years of the decedent's last employment in the industry. The only doctor who testified stated that the claimant's suicide was a result of the occupational disease. He did not testify that it "might have" or "possibly" so resulted, but that in his opinion the anthracosilicosis was one of the causal factors of the depression which caused the suicide. The fact that on cross-examination he said that as a result of the disease there was "probably" some interference with the nutrition of the brain tissues, and that such action on the brain tissues was only an educated guess, does not make his opinion as to causation equivocal or conflicting. It is merely an indication of the complexities that must be considered in a diagnosis where there are psychiatric involvements. This matter is thoroughly discussed in the opinion of the court below, and I agree with the able and experienced judges of that court that the Board capriciously disregarded this uncontradicted medical testimony.

However, more important than this is the apparent inference that death resulting from suicide as a result of occupational disease or, for that matter, industrial accident, is not compensable unless the claimant proves medically "that the act of suicide was committed while in a delirium or frenzy so that he was without rational knowledge of the physical consequences of his act as a direct result of . . . [the] disease, with which he was afflicted." This, in effect, imports the M'Naghten rule as to criminal responsibility into this field with which it has no relation. As a matter of medical fact, as Dr. Robinson testified, suicide is a common result of mental depression. Knowledge by the victim of the mental illness of the physical consequences of what he is doing does not in such case prevent the suicide from being a result of the mental illness. If this in turn is caused or contributed to by the occupational disease, the death is compensable under the language of the act.

WATKINS, J., joins in this dissent.