544 A.2d 953

**GLOBE SECURITY SYSTEMS CO. and National Union Fire Insurance Company, Appellants,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (Jorge GUERRERO, Deceased; Roberta Guerrero, Widow), Appellees.**

Supreme Court of Pennsylvania.

Argued March 7, 1988.

Decided July 28, 1988.

Louis C. Long, Meyer, Darragh, Buckler, Bebenek & Eck, Fred Trenor, Pittsburgh, for appellants.

Barbara Behrend Ernsberger, Behrend, Moran, Ernsberger and Tamilia, Pittsburgh, Thomas J. Magrann, Secretary Workmen's Compensation Appeal Board, Harrisburg, for appellees.

Before LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

STOUT, Justice.

This is an appeal by Globe Security Systems Company and National Union Fire Insurance Company from the award of fatal claims benefits, arising from suicide, under section 301(a) of the Pennsylvania Workmen's Compensation Act, Pa.Stat.Ann. tit. 77, § 431 (Purdon 1952 & Supp. 1987). *See Globe Sec. Sys. Co. v. Workmen's Comp. Appeal Bd.*, 103 Pa.Commw. 384, 520 A.2d 545 (1987). In relevant part, that law provides:

> Every employer shall be liable for compensation for ... the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence.... Provided, That no compensation shall be paid when the ... death is intentionally self inflicted....

On February 10, 1978, Globe Security Systems Company employed Jorge Guerrero as a security guard at a state liquor store. On that day, two men entered the store and attempted a robbery. Jorge Guerrero and another individual thwarted the robbers and, shortly thereafter, escorted the men out of the store. Mr. Guerrero detained the two men and waited for the police to arrive. While doing so, Mr. Guerrero's gun, which he had pointed at the throat of one of the robbers, accidentally discharged and severely injured the man. Mr. Guerrero then re-entered the lobby of the liquor store, stood alone for about two minutes, exited

the store and, using the same gun, fatally shot himself in the head.

Shortly after her husband's death, Roberta Guerrero petitioned for fatal claims benefits under section 301.[1] She alleged that, although her husband died due to a self-inflicted wound, he had become so emotionally disturbed at accidentally shooting the would-be-robber that he did so unintentionally. On direct examination, Mrs. Guerrero's medical expert noted, over objection, that Jorge tested as "warm-hearted and easygoing," N.T. March 26, 1981 at 10, and fell within normal limits with respect to both his physical and psychological tests, based on the battery of tests that Jorge had taken to determine whether he was physically fit to handle a lethal weapon and otherwise to perform his job. When asked his opinion concerning the cause of death, from his study of Jorge Guerrero and the circumstances surrounding his death, the expert responded:

> [Jorge Guerrero] as a result of ... the man who got shot being shot, suffered an acute psychotic episode, and as a result of this psychotic episode—a psychotic episode, I might say, is someone who is out of contact with reality at the time—and as a result of this, Mr. Guerrero shot himself.

*Id.* 13. He likened Jorge's reaction to hysterical phychoses that soldiers experience in combat.

Globe Security's medical expert opined, on the other hand, that there was no adequate proof available to establish that the decedent had any mental disturbance when he shot himself and, therefore, his suicide was intentional. This

---

**1.** Globe Security contests the Referee's finding that Roberta Guerrero was the common law wife of Jorge because their legal marriage had previously ended in divorce. Commonwealth Court found that substantial evidence existed to support a finding that Roberta and Jorge, who continued to live together after their divorce, held themselves out to be husband and wife, and therefore were effectively remarried under the common law principles espoused in *Commonwealth ex rel. McDermott v. McDermott,* 236 Pa.Super. 541, 345 A.2d 914 (1975). We agree and will not address the matter further.

expert did admit, however, that Jorge's suicide was related to the prior shooting of the robber.[2]

The Referee made findings of fact in favor of Mrs. Guerrero, accepted the views of her expert as more credible than those of Globe Security's expert, and found that the shooting of the robber created in Jorge a mental disturbance, a phychosis, which caused him to take his own life. The Referee concluded, as a matter of law, that "decedent was in the course of his employment when he was injured and the injury and death were related thereto." Referee's Decision of November 15, 1982, Conclusion of Law No. 6. The Workmen's Compensation Appeal Board affirmed the Referee's findings and, citing *University of Pittsburgh v. Workmen's Comp. Appeal Bd.,* 49 Pa.Commw. 347, 405 A.2d 1048 (1979), concluded that the decedent was out of touch with reality as a result of the shooting and, as such, his suicide was not intentional. The Commonwealth Court affirmed.

Appellants argue that the opinion of the Commonwealth Court should be overruled because (1) the Workmen's Compensation Act prohibits an award of benefits whenever the injury is self-inflicted, (2) the suicide was not preceded by a work-related injury, (3) the Commonwealth Court erred in abandoning the *Sponatski* rule[3] and in applying the chain-of-causation test to establish causal connection to the employment relationship, and (4) there was insufficient evidence to support the award. These arguments are not

2. On cross-examination of Globe Security's expert, the following exchange occurred:
   Q. Would the fact that someone had committed suicide be enough at least to say that the person was in a distressed or disturbed state?
   A. I think this man was probably distressed and disturbed.
   Q. Do you relate that distressed and disturbed state to the fact he had shot someone that day?
   A. Yes, I think if he hadn't shot somebody, I don't think he would have killed himself.
   N.T. April 30, 1982 at 29.

3. The rule derives from *In re Sponatski,* 220 Mass. 526, 108 N.E. 466 (1915).

meritorious. This suicide was caused by a work-related injury which was not intentionally self-inflicted.

■ The Workmen's Compensation Act does not prohibit an award of benefits in all cases where deaths were self-inflicted, but only in those cases where death was *intentionally* self-inflicted. Preliminarily, effect must be given, if possible, to every word of a statute. *See* 1 Pa.Cons.Stat. Ann. § 1921(a) (Purdon Supp. Pamph. 1987). *See also Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662 (1983); 2A N. Singer, *Sutherland Statutory Construction* § 46.06, at 104 (4th ed. 1984). "Intentionally" is a restrictive word which limits the word which follows it. "General words shall be construed to take their meanings and be restricted by preceding particular words." 1 Pa.Cons.Stat.Ann. § 1903(b) (Purdon Supp. Pamph. 1987). It is patently clear, on statutory construction alone, that it was not the legislative intent to render all self-inflicted deaths noncompensable, but only those that were intentionally self-inflicted.

■ In addition to the fact that unintentionally self-inflicted injuries are compensable, since the 1972 amendment of section 301 of the Workmen's Compensation Act,[4] which deleted the phrase "violence to the physical structure of the body" from the definition of injury, courts have held that work-related mental, as well as physical, injuries are compensable. *See Allegheny Ludlum Steel Corp. v. Workmen's Comp. Appeal Bd.*, 91 Pa.Commw. 480, 498 A.2d 3 (1985); *Klein v. Workmen's Comp. Appeal Bd.*, 91 Pa. Commw. 247, 496 A.2d 1346 (1985); *University of Pittsburgh v. Workmen's Comp. Appeal Bd., supra. Accord Findley v. Industrial Comm'n of Arizona*, 135 Ariz. 273, 660 P.2d 874 (1983); *Burnight v. Industrial Accident Comm'n*, 181 Cal.App.2d 816, 5 Cal.Rptr. 786 (1960); *Wilder v. Russell Library Co.*, 107 Conn. 56, 139 A. 644 (1927). The Commonwealth Court therefore was correct in affirming the Referee's conclusion that the suicide was preceded by a work-related injury.

4. 1972 Pa.Laws 61 (amending Pa.Stat.Ann. tit. 77, § 411 (Purdon 1952)).

Insofar as causation is concerned, the Commonwealth Court also wisely applied the chain-of-causation test rather than the *Sponatski* test.[5] The *Sponatski* test has two prongs: "uncontrollable impulse" and "knowledge of the physical consequences." For a suicide to be compensable, it requires that the employee take his life while possessed by an uncontrollable impulse or while in a delirium or frenzy. Moreover, he must not be aware of the physical consequences of his act. If, however, the suicide is a voluntary, wilful choice with knowledge of the physical consequences, it is an independent, intervening cause even though the choice was the product of a disordered mind. Despite initial, widespread adoption,[6] this test has suffered legislative demise in the land of its birth,[7] judicial demise in many jurisdictions,[8] and has been "bent without being avowedly

**5.** The *Sponatski* test is founded on *Daniels v. New York, N.H. & H.R. Co.,* 183 Mass. 393, 67 N.E. 424 (1903), a tort case. *Sponatski* said of the rule in *Daniels:*

[it] applies to cases arising under the workmen's compensation act. It is that where there follows as the direct result of a physical injury an insanity of such violence as to cause the victim to take his own life through an *uncontrollable impulse* or in a delirium or frenzy "without conscious volition to produce death, having knowledge of the physical consequences of the act," then *there is a direct and unbroken causal connection* between the physical injury and the death. But where the resulting insanity is such as to cause suicide through a voluntary wilful choice determined by a moderately intelligent mental power which *knows the purpose and the physical effect* of the suicidal act even though choice is dominated and ruled by a disordered mind, then *there is a new and independent agency which breaks the chain of causation* arising from the injury.

*Sponatski, supra,* 220 Mass. at 530, 108 N.E. at 467–68 (citation omitted) (emphasis added).

**6.** 1A A. Larson, *Workmen's Compensation Law* § 36.21, at 6–142 (1985).

**7.** In 1937, Massachusetts effectively overruled *Sponatski* with the following Act:

Suicide by Employee. Dependents shall not be precluded from recovery under this chapter ... for death by suicide of the employee, if it be shown by the weight of the evidence that, due to the injury, the employee was of such unsoundness of mind as to make him irresponsible for his act of suicide.

Mass.Ann.Laws ch. 152, § 26A (Law.Co-op.1976).

**8.** *See, e.g., Kahle v. Plochman, Inc.,* 85 N.J. 539, 428 A.2d 913 (1981); *Schwab v. Department of Labor & Indus.,* 76 Wash.2d 784, 459 P.2d 1

broken" in other jurisdictions including Pennsylvania.[9] Of the rule Larson has written critically:

> *Uncontrollable impulse has to do with the will; knowledge of consequences has to do with the understanding.* It is abundantly evident that the second element is traceable to the criminal law test of insanity in *M'Naghten's Case.* But there is a decisive difference between the role of "insanity" in criminal law murder cases and in workmen's compensation suicide cases. It can well be argued in a criminal case that the accused's *understanding* is a crucial element, since it is necessary to the establishment of *mens rea* or criminal intent. But in the compensation suicide defense, the only legal issue is causation, and that in turn depends on the *will*, not on the understanding. If the injury so acts upon the will that it is not operating independently at the time of the suicide, then the chain of causation is clear, since there is no independent intervening cause. Whether the decedent knew the physical consequences of his act is utterly irrelevant to the question of causation.

1A A. Larson, *Workmen's Compensation Law* § 36.22, at 6–145 (1985) (citations omitted).

This Court has spoken inconsistently. In 1921, without citation of *Sponatski*, this Court relied on the *Sponatski* rule in *Lupfer v. Baldwin Locomotive Works*, 269 Pa. 275, 112 A. 458 (1921), and held that a suicide was unintentional where the employee took his or her life while possessed by an "uncontrollable insane impulse, or while in a delirium, or frenzy, without rational knowledge of the physical consequences of his act." *Id.*, 269 Pa. at 277, 112 A. at 458. In 1928, however, in *Gasperin v. Consolidated Coal Co.*, 293 Pa. 589, 143 A. 187 (1928), this Court applied the chain-of-causation test and affirmed an award where a "direct and unbroken causal connection" existed between the injuries and the death. *Id.*, 293 Pa. at 592, 143 A. at 188–89.

(1969); *Brenne v. Department of Indus., Labor & Human Relations,* 38 Wis.2d 84, 156 N.W.2d 497 (1968).

9. *See Generally* 1A A. Larson, *supra,* § 36.22, at 6–152 to –153.

The Superior Court consistently has applied the *Sponatski* test, without citation and under the appellation of the *Lupfer* test.[10] Its application was criticized, however, in *Zimmiski v. Lehigh Valley Coal Co.*, 200 Pa.Super. 524, 529–30, 189 A.2d 897, 899–90 (1963) (Flood, J., dissenting).[11]

The Commonwealth Court followed a more enlightened approach when, in 1986, it adopted the chain-of-causation test, which has displaced *Sponatski* as the majority rule.[12] The chain-of-causation test finds compensability if the injury causes a deranged mental condition which, in turn, causes the suicide.[13] In discarding the *Sponatski* rule, the Commonwealth Court set forth the elements that a claimant must prove in order to receive compensation for a suicidal death under the new test. Those elements are:

(1) that there was initially a work-related injury as defined by Section 301 of the Act; (2) which injury directly caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and (3) which disturbance resulted in the employee's suicide.

*McCoy v. Workmen's Comp. Appeal Bd.*, 102 Pa.Commw. 436, 440, 518 A.2d 883, 884–85 (1986) (citation omitted). We join the majority view[14] and adopt the chain-of-causation

---

10. See *Blasczak v. Crown Cork & Seal Co.*, 193 Pa.Super. 422, 165 A.2d 128 (1960); *Widdis v. Collingdale Millwork Co.*, 169 Pa.Super. 612, 84 A.2d 259 (1951); *Kasman v. Hillman Coal & Coke Co.*, 149 Pa.Super. 263, 27 A.2d 762 (1942); *Cubit v. City of Philadelphia*, 138 Pa.Super. 325, 10 A.2d 853 (1940).

11. In 1985, Larson commented that *Zimmiski* appears to be the only reported case in the last quarter-century in which the "knowledge of the consequences" component of *Sponatski* figured in a denial of compensation. 1A A. Larson, *supra*, § 36.22, at 6–146.

12. *Id.* § 36.30, at 6–154.

13. *Id.* § 36.10, at 6–141.

14. For insight on the subject of suicide compensability, *see* J. Batt & C. Bastien, *Suicide as a Compensable Claim Under Workers' Compensation Statutes: A Guide for the Lawyer and the Psychiatrist*, 86 W.Va.L. Rev. 369 (1984); Note, *Mental Disorders and Suicide as Compensable Injuries Under Worker's Compensation: Will South Dakota Follow the Trend?*, 30 S.D.L.Rev. 636 (1985); Annotation, *Suicide as Compensable Under Workmen's Compensation Act*, 15 A.L.R.3d 616 (1967).

test, which is consistent with the humanitarian purpose of the Pennsylvania Workmen's Compensation Act,[15] as the law of this Commonwealth. Since the Commonwealth Court found that there was substantial competent evidence to support the award under this test, and we agree, the decision of the Commonwealth Court is affirmed.

McDERMOTT, J., files a concurring opinion.

McDERMOTT, Justice, concurring.

I join the majority's interpretation permitting recovery under the facts of this case; and I am satisfied that the majority's reasoning is sufficient without reference to other learned text.

**15.** *See Krawchuk v. Philadelphia Elec. Co.,* 497 Pa. 115, 120, 439 A.2d 627, 630 (1981).