**PENNSYLVANIA POWER & LIGHT, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (Donald N. LECHNER, Deceased c/o Bertha L. Lechner), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1998.

Decided Oct. 26, 1998.

Scott A. Fleischauer, Harrisburg, for petitioner.

Jon C. Lyons, Lancaster, for respondent.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Pennsylvania Power & Light Company (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) granting the fatal claim petition filed by Bertha D. Lechner (Claimant). We affirm.

Claimant filed a claim petition alleging that, on August 29, 1992, her husband, Donald N. Lechner, Sr. (Decedent), committed suicide as a result of chronic pain and depression stemming from a work-related injury.[1] Employer filed a timely answer denying these allegations and averring that Decedent committed suicide because of non work-related personal problems.

During hearings before the WCJ,[2] Claimant testified that Decedent worked for Employer for about forty years prior to sustaining a work-related injury in February of 1988. Claimant testified that, following the work injury, Decedent became discouraged because he was unable to work, he suffered from severe pain in his leg and groin, he was unable to sleep at night and he was impotent. Claimant stated that Decedent's symptoms worsened from 1988 through 1992 and he was hospitalized twice for psychiatric care.

Claimant testified that, on August 29, 1992, she and Decedent went to a local bar at approximately 9:30 a.m., and Claimant left Decedent there around 1:00 p.m. Claimant described Decedent as "really plastered" when he returned home at 8:00 p.m. (R.R. 21a.) Claimant testified that Decedent fell on the floor and had difficulty getting up, finally pulling himself up with a chair.

According to Claimant, Decedent then stated, "You get your gun and I will get mine and we will end it." (R.R. 21a.) Claimant saw Decedent holding a gun and she dialed 911. The police took Claimant to her son's home and later took her to the hospital, where a surgeon informed her that a bullet was lodged in Decedent's brain and nothing could be done for him. Decedent died the following morning.

Dixen Miller, Ph.D., a clinical psychologist, testified that Decedent was referred to him by an orthopedic surgeon for treatment of chronic pain. Dr. Miller saw Decedent from November of 1989 through August of 1991. He testified that Decedent had consistent complaints of pain in his back, legs and groin, sleeplessness due to pain, and impotence. Dr. Miller described Decedent as frustrated by continuous pain and inability to work. He stated that Decedent was stressed by the lack of a clear diagnosis and treatment plan, that his level of stress was becoming unbearable, and that he reported thoughts of suicide. Dr. Miller testified that Decedent was hospitalized twice for psychiatric treatment

---

1. Decedent sustained an injury to his back on February 28, 1988 and received compensation for total disability pursuant to a notice of compensation payable.

2. We have summarized only a portion of the testimony provided by thirteen witnesses during the course of the hearings.

due to the severity of his depression. In October of 1991, the time of his second hospitalization, Decedent was sleeping with a gun under his pillow.

Dr. Miller agreed that Decedent's alcohol consumption could have had an effect on his actions.[3] Dr. Miller proposed, as a reasonable hypothesis, that Decedent made the decision to commit suicide and then drank to give himself courage. He further opined that in the absence of his pain, Decedent would not likely have committed suicide, even if he were drunk.

Irwin Hirsch, M.D., Decedent's family physician, testified that he had seen Decedent several times a year since 1988. He stated that Decedent complained of chronic pain in his back, legs and testicles over the years, which made sleeping difficult and caused Decedent to be angry and upset. Dr. Hirsch testified that Decedent had tried numerous medications and forms of treatment, including epidural steroid injections and a TENS unit, all without success. He described Decedent as very frustrated that doctors were unable to help him, and he opined that this frustration, combined with Decedent's depression, anger, and lack of hope caused him to commit suicide. Dr. Hirsch noted that Decedent underwent a serious surgical procedure just prior to his death, which he believed would alleviate his pain, but was unsuccessful. Dr. Hirsch also acknowledged that alcohol consumption could amplify the effect of Dalmane and could impair a person's judgment.

David Nutter, M.D., a psychiatrist, first saw Decedent in March of 1990, during Decedent's first hospitalization for psychiatric treatment. Dr. Nutter testified that, at that time, Decedent was depressed because there was no resolution to his pain, he had difficulty sleeping due to his pain, he suffered from impotence which resulted from his work-injury, and he saw no hope for the future. Dr. Nutter testified that Decedent was readmitted for psychiatric care in October of 1991, at which time Decedent stated he did not want

to live because doctors said they could not help him and he could not live with the pain. Dr. Nutter agreed that alcohol played a role in Decedent's suicide. However, he opined that Decedent's stress due to pain, not working, and his inability to function generally, were the significant causes that led to his suicide.

East Lampeter Police Officer Robin Weaver testified on Employer's behalf, stating that he responded to Claimant's 911 call, took Claimant to her son's home, then returned and "cleared the call."[4] Officer Weaver stated that when he returned to the station, he spoke to Decedent by telephone. Officer Weaver described Decedent's speech as slow and deliberate, but not slurred or obviously impaired. Officer Weaver testified that Decedent repeatedly complained that he was in constant pain, could not work, that no one cared about him, and that he had no reason or purpose for living.

Employer also presented the testimony of Abram Hostetter, M.D., who is board certified in psychiatry and neurology. Dr. Hostetter testified that Decedent's medical records reflected a long history of treatment for back problems, that he was hostile and negative towards his treating physicians, that he had been drinking on the day of his suicide and was using Dalmane to aid in sleeping, and that he had a paranoid personality disorder. Dr. Hostetter opined that Decedent did not commit suicide as a result of his work injury, but that Decedent's age, race, gender, alcohol abuse, history of mental illness and marital problems were the factors that led to his suicide. Dr. Hostetter further opined that Decedent's blood alcohol level would have impaired his judgment.

The WCJ rejected the testimony of Dr. Hostetter as not credible. He accepted the testimony of Doctors Miller, Hirsch and Nutter as credible, noting that each of these professionals treated Decedent and testified live at the hearings. The WCJ noted that all three agreed that, while Decedent was intoxi-

---

**3.** Toxicology reports revealed that Decedent had a blood alcohol level of .151 on the day of his death and were positive for Dalmane, a tranquilizer.

**4.** Based on a determination that Decedent did not represent a threat to himself or others, the police left the scene.

cated at the time of his suicide, this did not play a significant role in his suicide. The WCJ granted Claimant's fatal claim petition, finding that Decedent committed suicide as a result of severe depression brought on by unrelieved pain and associated problems of impotence and sleeplessness and that these conditions were caused by his work-related injury.

Employer appealed to the Board, arguing that Claimant had not met her burden of proof under the "chain of causation" test, in that Decedent's death occurred while he was grossly intoxicated. Employer also argued that Claimant's petition should have been dismissed because Decedent's acts while intoxicated were self-inflicted and were in violation of the law.

██ The Board affirmed the WCJ's decision. The Board first cited the "chain of causation" test, as set forth in *McCoy v. Workmen's Compensation Appeal Board (McCoy Catering Services, Inc.)*, 102 Pa. Cmwlth. 436, 518 A.2d 883 (1986), *appeal denied*, 517 Pa. 595, 535 A.2d 84 (1987), which is applied to determine whether suicide is a compensable injury. Under this test, a claimant must prove: 1) that there was initially a work-related injury, 2) which directly caused the employee to become dominated by a disturbance of mind of such severity as to override normal rational judgement, and 3) which resulted in the employee's suicide. *Id.* The Board reviewed the testimony accepted by the WCJ and concluded that competent evidence supported the WCJ's findings and resulting conclusion that Claimant had satisfied the "chain of causation" test.

The Board also concluded that the evidence did not reflect that Decedent's death resulted from a violation of law, so that the provisions of Section 301(a) of the Workers' Compensation Act (Act)[5] relating to an employee's violation of the law did not apply. The Board further concluded that Employer had waived this issue by failing to raise it before the WCJ.

On appeal to this Court,[6] Employer raises the following issues: 1) whether Claimant met her burden of proof under the "chain of causation" test; 2) whether the WCJ was bound to apply the 1993 amendments to Section 301(a) of the Act;[7] and 3) whether the WCJ entered a reasoned decision. Employer cites Decedent's intoxication at the time of his death in support of each argument.

██ Section 301(a) of the Act provides that no compensation shall be paid where the employer proves that the employee's injury or death was self-inflicted. However, this section does not preclude an award of benefits in all cases where injury is self-inflicted, and death resulting from suicide may be compensable if, under the "chain of causation" test, it is found that the death was not intentionally self-inflicted. *Globe Security Systems Co. v. Workmen's Compensation Appeal Board (Guerrero)*, 518 Pa. 544, 544 A.2d 953 (1988). After careful review of the record, we conclude that Claimant presented substantial competent evidence that satisfied the elements of the "chain of causation" test.[8]

Employer's second argument is that the WCJ erred in failing to apply the 1993 amendments to Section 301(a). As amended in 1993, Section 301(a) now provides:

> In cases where the injury or death is caused by intoxication, no compensation shall be paid if the injury or death would not have occurred but for the employe's

---

5. Act of June 2, 1915, P.L. 736 *as amended*, 77 P.S. §431.

6. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

7. Act of July 2, 1993, P.L. 190, effective in 60 days (Act 44).

8. Section 301(a) also precludes an award of benefits where an employer proves, by more than a preponderance of the evidence, a causal connection between the injury and the employee's violation of the law. *Graves v. Workmen's Compensation Appeal Board (Newman)*, 668 A.2d 606 (Pa. Cmwlth.1995). Employer does not pursue its argument under this provision on appeal.

intoxication, but the burden of proof of such fact shall be on the employer.

77 P.S. §431.

■ Employer maintains that the WCJ erred by failing to consider this provision and asks this Court to remand the case. However, a review of the record reveals that Employer waived the issue of Act 44's applicability to this case by failing to raise this issue before the WCJ or the Board. Pa.R.A.P. 1551.[9]

■ Moreover, as noted by Employer, the injury in this case occurred in 1992, while the amendments to Section 301(a) became effective on September 1, 1993, and in claims for disability, the terms of the statute in effect on the date of injury govern the substantive rights of the parties. *Page's Department Store v. Velardi,* 464 Pa. 276, 346 A.2d 556 (1975).

■ A substantive right is implicated when the retroactive application of a statute imposes new legal burdens on past transactions or occurrences, *Id.,* and legislation that affects a claimant's entitlement to benefits affects a substantive right. *Banic v. Workmen's Compensation Appeal Board (Trans-Bridge Lines, Inc.),* 664 A.2d 1081 (Pa. Cmwlth.1995), *aff'd,* 550 Pa. 276, 705 A.2d 432 (1997). Such legislation may not be retroactively applied in the absence of clear legislative intent to that effect.[10] This Court has previously noted that, with respect to substantive changes, Section 26 of Act 44 strongly implies that Act 44's provisions are

*not* to be retroactively applied.[11] *Florence Mining Co. v. Workmen's Compensation Appeal Board (McGinnis),* 691 A.2d 984 (Pa. Cmwlth.1997); *Keystone Coal Mining Co. v. Workmen's Compensation Appeal Board (Wolfe),* 673 A.2d 418 (Pa.Cmwlth.1996)

■ Clearly, the provision added to Section 301(a) by the 1993 amendments to Section 301(a) is substantive, as it affects a claimant's right to benefits,[12] and applies only to injuries occurring after September 1, 1993. Accordingly, the WCJ did not err by failing to apply the amended provision to the facts of this case.

Finally, Employer argues that the WCJ failed to enter a reasoned decision. As amended in 1993, Section 422(a) of the Act, 77 P.S. §834, requires the WCJ to clearly and concisely explain the rationale for his decision and specify the evidence upon which he relied.[13] A review of the record reveals that Employer did not raise this issue before the Board and therefore this issue is waived on appeal. Pa.R.A.P. 1551. Moreover, in a sixteen-page opinion containing thirty-nine findings of fact, the WCJ summarized the testimony of twelve witnesses, indicated the testimony that he accepted as credible, and set forth clearly the basis for his decision.

Accordingly, the order of the Board is affirmed.

### ORDER

NOW, October 26, 1998, the order of the Workers' Compensation Appeal Board, at

---

9. Employer contends that this issue was preserved by virtue of the extensive evidence presented regarding the fact of Decedent's intoxication. However, it is clear that the only *issues* raised below were whether Decedent's intoxication precluded Claimant from satisfying the "chain of causation" test or whether the injury was caused by a violation of law. See Employer's answer to the claim petition (R.R. 4a) and Employer's appeal from the WCJ's decision (R.R. 562a – 568a.). In addition, Employer makes no reference in the argument portion of its brief to a place in the record reflecting that this issue was preserved. Pa.R.A.P. 2119(e).

10. Section 1926 of the Statutory Construction Act (SCA), 1 Pa.C.S. §1926, provides that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." With respect to the construction of

amendatory statutes, Section 1953 of the SCA, 1 Pa.C.S. §1953, states that "new provisions shall be construed as effective only from the date when the amendment became effective."

11. Section 26 of Act 44 is set forth in a note to Section 301(a) of the Act at 77 P.S. §431.

12. Stated otherwise, the provision is substantive because it affects the right of an employer to raise a defense. *See Page's Department Store; Borman v. Workmen's Compensation Appeal Board (Bechtel Construction, Inc.),* 164 Pa. Cmwlth. 500, 643 A.2d 780 (1994), *appeal denied,* 541 Pa. 643, 663 A.2d 694 (1995).

13. Section 422(a) is a procedural provision and was in effect at the time the WCJ issued his decision.

No. A96–2980, dated February 17, 1998, is affirmed.