# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Oldcastle Infrastructure, Inc.,      :
            Petitioner      :
                            :
           v.             :    No. 242 C.D. 2025
                            :
Dominick DiStefano (Workers'      :
Compensation Appeal Board),      :
            Respondent    :    Submitted: May 12, 2026

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE MATTHEW S. WOLF, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                FILED: June 29, 2026

Oldcastle Infrastructure, Inc. (Employer) petitions this Court for review of a February 19, 2025 order of the Workers' Compensation Appeal Board (Board), which affirmed a decision by workers' compensation judge (WCJ) Denise Krass granting a petition for disability benefits (Claim Petition) filed by Dominick DiStefano (Claimant). Employer maintains that Claimant's injury was not compensable because it was intentionally self-inflicted, did not arise in the course or scope of his employment, and was not shown to be work-related; furthermore, Employer contends that Claimant has not met his burden of proof as to the duration of his disability. Because WCJ Krass's decision is supported by substantial evidence of record, we affirm.

## I. Background

The instant dispute began with the filing of the March 29, 2023 Claim Petition, in which Claimant alleged that he was injured on January 20, 2023, "when a heavy bolt was dropped on his left lower leg during [the] course and scope of his employment." Certified Record (C.R.), Item No. 2. As result of the bolt drop, Claimant contended, he sustained a left leg strain and contusion, a left ankle strain and contusion, left ankle septic arthritis, left ankle cellulitis, and left ankle osteomyelitis, requiring hospitalization, surgery, and an indefinite absence from work as of the date of the injury. *Id.* Employer filed a timely answer to the Claim Petition asserting that Claimant never suffered a disabling injury in the course or scope of his employment. C.R., Item No. 4. Later, Claimant amended his claim to reflect a work injury date of January 18, 2023, and a cessation of disability as of January 20, 2024. C.R., Item No. 11 (3/27/2024 Hr'g Tr.) at 7, 25.

In support of the Claim Petition, Claimant offered his own hearing and deposition testimony as well as medical documents attesting to his ongoing treatment for his leg ailments. In its defense, Employer submitted the deposition testimony of Allen Reed, a plant manager and former immediate supervisor of Claimant; of Dr. Michael Silverman, an infectious disease expert; and of Dr. Steven Boc, a surgeon who performed an independent medical examination (IME) of Claimant.

### A. Claimant's Evidence

### 1. Claimant Testimony

At the time of his injury, Claimant was working as a forklift operator, a position that he had held for nearly 20 years. C.R., Item No. 12 (Claimant Dep.) at 7. In the course of his employment, Claimant was tasked with the loading of

concrete pipes onto trucks, the removal of pallets with a sledgehammer, and the fueling of trucks, in addition to the driving of a forklift. *Id.* at 8-11. On the evening of January 18, 2023, Claimant had finished his shift, clocked out, and removed his jacket to remove the ample dust that had accumulated, as usual, on his clothing. *Id.* at 15. As he did, a bolt roughly three inches in length fell from his jacket pocket and fell on his shin just above his boots. *Id.* at 15-16. Feeling a burning sensation where the bolt struck his shin, Claimant sat in the office for approximately 10 minutes before walking to his car to go home. *Id.* at 19. Claimant was not concerned that the bolt strike caused a major injury, supposing instead that the mark it left would fade on its own and returned to work the next day as usual. *Id.* at 19-20. The affected area on his shin was sore but did not prevent Claimant from walking. *Id.* at 20.

In the early hours of January 25, 2023, while in bed, Claimant experienced a 105-degree fever and went to a hospital emergency room; he was discharged later the same morning. Claimant Dep. at 22-23. Claimant recalled that, though suffering from a fever, he did not have trouble walking. *Id.* at 22. After calling out from work later that day, Claimant went to sleep but woke again in the early hours of January 26, 2023, with pain, and presented that time with difficulty walking and leg pain. *Id.* at 23-24. On February 24, 2023, Claimant presented to Dr. Lindsey Jablonski, an infectious disease specialist, with severe pain resulting from the infection. *Id.* at 27. Dr. Jablonski ordered a laparoscopic washout procedure to clear out the infection, which was performed on March 3, 2023, by Dr. David Reinhardt. *Id.* at 28. Following the operation, Claimant underwent four weeks of physical therapy and was determined by Dr. Jablonski to be free from the infection on March 24, 2023. *Id.* at 29-30.

During a March 27, 2024 videoconference hearing, Claimant testified that he continued to experience ankle pain, feelings of numbness and chillness in his left toes, and trouble walking as his left foot tends to flop sideways. 3/27/2024 Hr'g Tr. at 28. Claimant's last medical treatment occurred in July 2023, when Dr. Reinhardt sent him home with no further treatment prescribed. *Id.* at 29. Nonetheless, Claimant had not returned to work for Employer or looked for work elsewhere. *Id.* at 29-30.

### 2. Claimant's Medical Records

Also during the March 27, 2024 hearing, Claimant presented notes compiled by Drs. Jablonski and Reinhardt contemporaneous to his treatment. Notably, Dr. Jablonski wrote in her notes that blood cultures taken from Claimant's ankle on February 24, 2023, confirmed the presence of hemophilus influenzae, a bloodborne infection. C.R., Item No. 15 (Medical Packet part 2), Exhibit 3. Dr. Jablonski also noted an inability by Claimant to ambulate without the aid of crutches. *Id.* Ultimately, Dr. Jablonski diagnosed Claimant with bacterial arthritis and left ankle and foot sepsis as a result of the hemophilus influenzae. *Id.* Following up on March 24, 2023, Dr. Jablonski reviewed a magnetic resonance imaging (MRI) of Claimant's left ankle and determined that he had incurred osteomyelitis. *Id.* Concerning etiology, Dr. Jablonski conjectured that the infection and its sequelae were "a complication of the initial injury in which a bolt was dropped on [Claimant's] leg." *Id.*

Dr. Reinhardt noted during an April 5, 2023 appointment that Claimant was still walking on crutches and complained of stiffness and soreness, but presented with only mild pain. Medical Packet part 2, Exhibit 4. During a subsequent appointment on May 17, 2023, Dr. Reinhardt noted that Claimant still experienced

4

swelling of his left ankle if he remained standing for too long and still used his crutches from time to time. *Id.* After his final appointment with Claimant on July 19, 2023, Dr. Reinhardt wrote that there was no further care or treatment required in the absence of any signs of continued infection. *Id.* Dr. Reinhardt also believed that Claimant would continue to suffer occasional inflammation, for which he prescribed an anti-inflammatory medication. *Id.*

## B. Employer's Evidence

### 1. Reed Testimony

At an August 31, 2023 deposition, Mr. Reed stated that he had worked for Employer for over 35 years and was currently employed as a plant manager. C.R., Item No. 21 (Reed Dep.) at 8. Mr. Reed recalled that on the morning of Claimant's first hospitalization, Claimant telephoned him to inform him that he would not be at work the next day due to an unexplained fever. *Id.* at 12-13. At the end of that week, Claimant told Mr. Reed for the first time of the bolt that he dropped on his leg. *Id.* at 13-14. Claimant also reported to Mr. Reed that, on the day before his initial hospitalization, he was running around with his grandchildren in a park and felt fine. *Id.* at 17-18. At the time of his deposition, Mr. Reed still deemed Claimant an employee and testified that his work position was still available. *Id.* at 20.

### 2. Dr. Silverman Testimony

At a February 7, 2024 deposition, Dr. Silverman testified that he was a 15-year veteran consultant on infectious diseases, prior to which he worked for 32 years treating infectious diseases at various Philadelphia hospitals. C.R., Item No. 19 (Silverman Dep.) at 10-11. At Employer's request, Dr. Silverman undertook an examination of available medical records, which he summarized as follows. Claimant inadvertently let a bolt drop from his jacket pocket while he was getting

5

ready to leave for home; the bolt struck his shin over his pants and left a bruise but did not break the skin. *Id.* at 16. Dr. Silverman noted that Claimant's condition improved markedly following his surgery but that he continued to use crutches sometimes. *Id.* at 19-20. No records were provided to Dr. Silverman from beyond the March 24, 2023 visit with Dr. Jablonski, or from before the second emergency room visit that occurred the previous year. *Id.* at 20. Following his review of the records, Dr. Silverman drafted a report in which he described Claimant's injury as "self-inflicted" but also opined that the strike of the bolt against Claimant's left shin "caused a bone contusion to the left lower leg which is likely responsible for the infectious complication that he suffered." *Id.*, Exhibit D-2.

Commenting on Dr. Jablonski's written notes, Dr. Silverman testified that hemophilus influenzae—the bacterium reportedly found by Dr. Jablonski in Claimant's blood sample—typically lives in the upper respiratory tract and is often associated with pneumonia and sinusitis. Silverman Dep. at 21. While it can be found in the bloodstream and may cause septic arthritis, that occurs far more often in children than in adults, Dr. Silverman explained. *Id.* at 21-22. Dr. Silverman described osteomyelitis, the other infectious illness with which Claimant was initially diagnosed, as an infection of the bone that is often seen in patients who suffer from diabetes or open wounds. *Id.* at 22-23.

Concerning the etiology of Claimant's symptoms, Dr. Silverman stated that he had never in his career seen the infectious reactions detected in Claimant's blood caused by a bruise alone, without any breaking of the skin. Dr. Silverman opined that the work incident was "an insignificant episode," inconsistent with any type of infectious complications. *Id.* at 27-28. Thus, Dr. Silverman concluded within a reasonable degree of medical certainty that the work incident would not be consistent

6

with the development of septic arthritis. *Id.* Asked to reconcile that opinion with the previous conclusion that the work incident was "likely responsible for the infectious complication," Dr. Silverman explained that he "was told by the attorney that was what happened." *Id.* at 36. Dr. Silverman added that he "was trying to piece that together" as well as he could in the absence of records from Claimant's first visit to the emergency room. *Id.*

### 3. Dr. Boc Testimony

Dr. Boc, a board-certified foot and ankle surgeon, performed an IME of Claimant on June 6, 2023. C.R., Item No. 20 (Boc Dep.) at 14-15. At the examination, Claimant presented with complaints of numbness in three left toes, pain, difficulty walking, and achiness, and Claimant walked with a cane. *Id.* at 19. Upon examination of Claimant's left leg, Dr. Boc noted a lack of swelling in his left ankle or his leg up to and including his left knee. *Id.* at 20-21. Also during the IME, the two discussed the work incident, how Claimant hurt his leg, and the lack of any breaking of the skin as a result of the bolt drop. *Id.* at 17-18. Asked during the deposition to opine on the etiology of Claimant's injuries, Dr. Boc was doubtful that the dropping of the bolt could lead to septic arthritis absent any laceration or penetration of the skin. *Id.* at 27-28.

Based on the IME and his review of the medical records, Dr. Boc concluded within a reasonable degree of medical certainty that Claimant was fully healed and capable of returning to work with no restrictions as of June 6, 2023. *Id.* at 25. No trace remained of any disabling infection, according to Dr. Boc, and no ongoing treatment or work restrictions were needed. *Id.* at 27-28.

7

## C. WCJ Decision

In a June 24, 2024 decision, WCJ Krass granted the Claim Petition and ordered Employer to pay disability benefits for the period beginning on January 20, 2023, through January 19, 2024. C.R., Item No. 6 (WCJ Decision), Conclusion of Law (C.L.) No. 2. WCJ Krass explained that Claimant met his burden of proving that the work incident resulted in the infections that followed and that he was temporarily totally disabled as a result. *Id.* In addition, WCJ Krass clarified that she found the work incident to have occurred in the course and scope of Claimant's employment and that any injury was not intentionally self-inflicted. *Id.*, C.L. Nos. 5-6. Noting his demeanor and language, WCJ Krass credited Claimant's testimony as both credible and persuasive on the circumstances of the work incident, the mechanism of his injury, medical history, symptomology, and limitations on his functioning following the incident. *Id.*, Finding of Fact (F.F.) No. 12(a).

As for Employer's medical witnesses, WCJ Krass found neither to be credible nor persuasive. Dr. Silverman, WCJ Krass noted, "was unable to provide an opinion concerning what caused [] Claimant's medical condition" or to explain the acknowledgement in his written report that the bolt strike was likely responsible for the infection that followed. WCJ Decision, F.F. No. 12(c). WCJ Krass further noted that Dr. Silverman's testimony was weakened by the paucity of medical records made available for his review. *Id.* Dr. Boc's testimony was rejected because he "discounted the significance of [] Claimant's continuing complaints of pain and disability" and failed to provide an explanation for those complaints. *Id.*, F.F. No. 12(d).

8

Employer appealed to the Board, which affirmed without dissents. *See* C.R., Item No. 8. This appeal followed.[1]

## II. Discussion

In workers' compensation proceedings, a claimant seeking benefits via a claim petition carries the burden of establishing two elements: (1) that he was injured while in the course of employment and (2) that the injury resulted in a loss of earning power. *Cruz v. Workers' Comp. Appeal Bd. (Kennett Square Specialties)*, 99 A.3d 397, 407 (Pa. 2014). Under the three-part *Slaugenhaupt* test, an injury may be deemed work-related even if it does not occur while the employee is furthering his employer's interests when the employee (1) is on premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (2) is required by the nature of the employment to be present on those premises; and (3) sustains injuries caused by the condition or by operation of the employer's business or affairs thereon. *U.S. Airways, Inc. v. Workers' Comp. Appeal Bd. (Bockelman)*, 221 A.3d 171, 176 (Pa. 2019) (citing *Workmen's Comp. Appeal Bd. (Slaugenhaupt) v. U.S. Steel Corp.*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977)). The claimant also carries the burden of proving the duration of the work-related disability. *Edwards v. Workers' Comp. Appeal Bd. (Sear's Logistic Servs.)*, 770 A.2d 805, 808 (Pa. Cmwlth. 2001).

On appeal, Employer advances three arguments in support of the contention that WCJ Krass's decision was in error. First, Employer argues that Claimant's injury was "intentionally self-inflicted" and therefore not compensable. Employer's

---

[1] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007). Where the issue presented involves a question of law, our standard of review is de novo and our scope of review is plenary. *Id.*

9

Br. at 13. Second, Employer contends that the ailments Claimant suffered were not compensable for the additional reasons that the injury occurred outside the scope of Claimant's employment and was not reliably shown to have been caused by the work incident. Finally, Employer argues that Claimant failed to establish ongoing disability after July 19, 2023, the date of his last visit with Dr. Reinhardt.

## A. Intentional Self-Infliction

Section 301(a) of the Workers' Compensation Act provides that "no compensation shall be paid" when a worker's injury or death is "intentionally self inflicted, or is caused by the employe's violation of law, including, but not limited to, the illegal use of drugs[.]" Act of June 2, 1915, P.L. 736, No. 338, *as amended*, 77 P.S. § 431. The burden of proving that a death or injury was intentionally self-inflicted is upon the employer. *Id.* Our Supreme Court has held that self-inflicted injuries, even if fatal, may be compensable if the deceased employee "was possessed by an uncontrollable impulse or while in a delirium or frenzy" and was not "aware of the physical consequences of his act." *Globe Sec. Sys. v. Workmen's Comp. Appeal Bd. (Guerrero)*, 544 A.2d 953, 956 (Pa. 1988).

Instantly, Employer contends that Claimant's injury was intentionally self-inflicted. While acknowledging that Claimant was merely negligent in forgetting that the bolt was in his jacket pocket, Employer reasons that the "intentional act was hitting himself with his jacket to brush off dust." Employer's Br. at 13. "As such," Employer argues, "this is not a compensable event." *Id.*

Employer's argument is meritless. While Claimant's use of his jacket to brush dust off his clothing was intentional, it was not the brushing of his jacket but the fall of the bolt that injured his leg. Employer does not contend that Claimant brushed himself off with the jacket with the purpose of dropping the bolt on his leg; thus,

10

there is no reason to suppose that Claimant harbored any intent to injure himself. By contrast, the cases in which this Court has considered an employer's allegation of intentional self-infliction have involved serious, often fatal, injuries that resulted from suicide or an attempt thereof. *See, e.g., Globe*, 544 A.2d at 957 (holding that a claimant was entitled to benefits where decedent worker's suicide was caused by "a deranged mental condition" and therefore not intentional); *Martin v. Ketchum, Inc.*, 568 A.2d 159, 165 (Pa. 1990) (holding that benefits were unavailable to claimant where the decedent's "self-imposed expectations and his perception of success," rather than work conditions, caused his suicide); *Curtis v. Workers' Comp. Appeal Bd. (Berley Elec. Co*.), 730 A.2d 528, 535 (Pa. Cmwlth. 1999) (holding that a claimant "voluntarily remove[d] himself from the workplace" with a self-inflicted gunshot wound that "rendered him into a vegetative state"). Claimant's accidental drop of the bolt is simply not in the same class of cases, and we reject Employer's attempt to categorize these facts as giving rise to an intentional self-inflicted injury under the Act.

## B. Scope of Employment

Next, Employer argues that Claimant's actions on the day of his injury were "wholly foreign to [his] job duties" and amount to "an abandonment of employment." *Id.* at 14. While acknowledging that the first two prongs of the *Slaugenhaupt* test are met, Employer contends that the third—an injury caused by a condition of the premises or the business's operations—is not satisfied by the underlying facts in this case. Employer reasons that this case is analogous to *Lewis v. Lehigh Asphalt Paving and Construction (Workers' Compensation Appeal Board)*, 303 A.3d 893 (Pa. Cmwlth. 2023). In that case, the claimant hurried into a work truck after clocking out to go home but tore his Achilles tendon as he pushed

11

off with his left foot to step into the cab of the truck. *Id.* at 895. A WCJ denied a claim petition on the ground that the injury was not caused by a condition of the employer's premises, and the Board affirmed; we agreed, holding that the claimant's "act of stepping up into the vehicle was not a condition of [the e]mployer's premises and, as such, the parking lot did not cause or contribute to the causative chain of [the c]laimant's injury." *Id.* at 900.

We disagree with Employer, as *Lewis* is readily distinguishable from the instant matter. There is no indication in *Lewis* that the claimant's haste in raising himself into the vehicle was the result of anything other than his eagerness to depart from the workplace at the end of his shift. Here, by contrast, Claimant was engaged in the reasonable undertaking of removing dust that had accumulated on his person throughout the workday before leaving. There is no dispute that dust and debris are natural by-products of work in a warehouse facility, particularly where, as here, the operation of a forklift brings a worker into frequent contact with such matter. Thus, while Claimant was not furthering Employer's interests when he dusted himself off, we conclude that all three prongs of the *Slaugenhaupt* test are met and that the injury was within the scope of his employment.

### C. Causation

Next, Employer argues that Claimant "failed to prove causation." Employer's Br. at 16. Employer argues that Claimant's medical records "do[] not adequately explain causation," as Drs. Jablonski and Reinhardt offered mistaken accounts of the mechanism of his injury. *Id.* "Employer's experts," Employer contends, "both . . testified and agree[] that the mechanism of injury does not support" the finding of "a respiratory bacterium causing an ankle issue," particularly when all parties acknowledge that the skin was never broken. *Id.*

12

Employer essentially asks this Court to "reweigh the evidence or the WCJ's credibility determinations," which is not our role. *West Penn Allegheny Health Sys. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021). It is true that Employer's experts both expressed the viewpoint that an infection of hemophilus influenzae or other bacteria could not have caused Claimant's injuries. This observation is of no moment, however, because "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ"; rather, "the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). WCJ Krass clearly explained that her finding of causation was based not only on Claimant's fact testimony but also Claimant's credited medical record index which included the opinions of Drs. Jablonski and Reinhardt, and further on Employer's expert's—Dr. Silverman's—own acknowledgement that the fall of the bolt on Claimant's leg was "likely responsible for the infectious complication that he suffered." Silverman Dep., Exhibit D-2; *see also* WCJ Decision, F.F. Nos. 12(b), (c), (g). Based on the foregoing, we see no reason to disturb WCJ Krass's findings on the question of causation.

### D. Duration of Disability

Finally, Employer argues that Claimant failed to meet his burden of proof of disability for the duration found by WCJ Krass. Employer reasons that Dr. Reinhardt's finding of recovery from the infection as of July 19, 2023, is "entirely consistent" with the conclusion reached by Dr. Boc following the June 6, 2023 IME that Claimant was fully recovered. Employer's Br. at 16. Thus, Employer argues, "Claimant offers no medical evidence to support ongoing disability" beyond the date

13

of the IME or, at the latest, the final appointment with Dr. Reinhardt on July 19, 2023. *Id.* at 17.

We disagree, once again, with Employer. As WCJ Krass explained, Dr. Boc's testimony was deemed not credible because it failed to account for Claimant's "continuing complaints of pain and disability." WCJ Decision, F.F. No. 12 (d). This Court has long held that a claimant's credible testimony of continuing pain and incapacity to return to work, "even without the evidence of anatomical cause, is sufficient to support a finding of continued disability." *Giant Eagle, Inc. v. Workmen's Comp. Appeal Bd. (Chambers)*, 635 A.2d 1123, 1127 (Pa. Cmwlth. 1993). "Indeed," we have observed, a WCJ "can give more credence to a claimant's testimony regarding incapacitating pain than to a doctor's testimony." *Id.* In other words, Employer's last argument goes to the WCJ's credibility determinations, which are outside of our review absent an abuse of discretion.

### III. Conclusion

For the foregoing reasons, we affirm the Board.

_____
MATTHEW S. WOLF, Judge

14

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Oldcastle Infrastructure, Inc.,　　　　　:
　　　　　　　　　　Petitioner　　　:
　　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　:　No. 242 C.D. 2025
　　　　　　　　　　　　　　　　　:
Dominick DiStefano (Workers'　　:
Compensation Appeal Board),　　　:
　　　　　　　　　　Respondent　　:

# **O R D E R**


　　　　AND NOW, this 29th day of June 2026, the February 19, 2025 decision of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED.

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　MATTHEW S. WOLF, Judge